2005 UT App 488

**Lorin BLAUER, Plaintiff, Appellant, and Cross-appellee,**

**v.**

**DEPARTMENT OF WORKFORCE SERVICES, Defendant, Appellee, and Cross-appellant.**

**No. 20040848–CA.**

Court of Appeals of Utah.

Nov. 10, 2005.

Vincent C. Rampton, Jones Waldo Holbrook & McDonough, Salt Lake City, for Appellant.

Mark L. Shurtleff, Atty. Gen., Debra J. Moore, and J. Clifford Petersen, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before BILLINGS, P.J., GREENWOOD and McHUGH, JJ.

## OPINION

BILLINGS, Presiding Judge:

¶ 1 Plaintiff Lorin Blauer (Blauer) and Defendant Utah Department of Workforce Services (DWS) both appeal. Blauer appeals the trial court's order partially denying Blauer's motion for summary judgment and granting DWS's cross-motion for summary judgment. Blauer asserts the trial court erred in ruling the Career Services Review Board (CSRB) properly declined jurisdiction over Blauer's grievance. Blauer argues the trial court incorrectly determined that DWS did not demote Blauer as a matter of law under Utah Code section 67–19a–302(1). *See* Utah Code Ann. § 67–19a–302(1) (2004). DWS appeals the trial court's order denying DWS's motion to dismiss. DWS contends the trial court erred in asserting subject matter jurisdiction, because Blauer failed to name CSRB as a party respondent on appeal of CSRB's decision to the district court. We affirm.

## BACKGROUND

¶ 2 In December 1980, Blauer began working for DWS, achieving full-time merit status as a "Career Services Employee" in September 1981. Blauer's official job title was "Legal Enforcement Counsel III." Under the Division of Human Resource Management's (DHRM) classification plan for "Legal Enforcement Counsel" positions I through IV, the salary step range for Legal Enforcement Counsel III was 63–78 with a pay range of $25.05—$37.63. According to the DHRM job description for Legal Enforcement Counsel III, employees with this job title are responsible for providing "legal advice to agency management personnel, the workforce appeals board, agency Executive Directors, the commissioner on decisions of Administrative Law judges, and/or the entire agency."

¶ 3 As Legal Enforcement Counsel III, Blauer received favorable annual performance appraisals. However, in 2003, Blauer's performance score dropped 21 points from his 2002 performance rating, resulting in an "unsuccessful rating." Blauer challenged this unfavorable performance rating through the public employee grievance process.

¶ 4 On September 5, 2003, DWS's executive director (Executive Director) granted Blauer's grievance appeal and awarded him a successful performance rating for 2003. The Executive Director increased Blauer's performance rating by two points to the lowest possible "successful" rating, indicating there was an error, as identified by Blauer, in Blauer's performance evaluation. In increasing his performance rating, the Executive Director remarked that it was the division director's responsibility to determine "the best utilization of [Blauer's] skills for [his] own good as well as for the good of the department."

¶ 5 Accordingly, on September 9, 2003, Tani Downing, the division director (Division Director), removed Blauer from his other duties, making the adjudication of unemployment appeals his full-time responsibility. In her memo to Blauer, dated September 9, 2003, the Division Director states, "[t]his memo advises you of a change in your job placement. Effective today you will be assigned to conduct UI [unemployment insurance] hearings full-time with no change in job title or pay rate." The Division Director contends that she considered Blauer's assignment to full-time adjudication to be temporary.

¶ 6 Based on official DHRM job descriptions, employees whose full-time job function is to hear adjudicative appeals are ordinarily given the DHRM job title of "ALJ Non–Legal," not the title of "Legal Enforcement Counsel III." According to the DHRM job description for an ALJ Non–Legal, the "distinguishing characteristic[ ]" of individuals with the job title of ALJ Non–Legal is their responsibility to "preside at hearings consistent with the provisions of the Utah Administrative Procedures Act governing adjudicative proceedings." Unlike the job of Legal Enforcement Counsel III, an ALJ Non–Legal is not required to possess a juris doctorate degree or maintain membership in the Utah State Bar. The salary step range for an ALJ Non–Legal is 51–66 with a pay range of $18.09–$27.18 per hour.

¶ 7 In assigning Blauer the full-time responsibility of hearing unemployment insurance appeals, the Division Director did not alter Blauer's official job title as Legal Enforcement Counsel III. Nor did she decrease Blauer's pay range or benefits or assign him to the supervisor responsible for overseeing all other full-time adjudicators of appeals.

¶ 8 While there is no specific statement in the general job description for Legal Enforcement Counsel III that indicates Blauer was to preside over administrative hearings as part of his job responsibilities, DWS claims one of Blauer's core duties was the adjudication of appeals. DWS documents indicate that DWS had consistently assigned Blauer, along with another Legal Enforcement Counsel III, to preside over administrative hearings.

¶ 9 The number of weeks DWS assigned Blauer to hearings and the number of weeks Blauer held hearings varied each year. For instance, in 2000, Blauer presided over six to twenty hearings a week for thirty-six weeks, with most weeks falling between eleven and eighteen hearings. In 2003, DWS assigned Blauer to three to fourteen hearings a week for nineteen weeks, with eight being the typical number of hearings per week.

¶ 10 After the Division Director modified Blauer's job responsibilities, Blauer filed a grievance with DWS's Executive Director, alleging DWS had demoted him without warning or an opportunity to be heard. On October 14, 2003, DWS declined Blauer's request for a hearing, maintaining that DWS did not demote Blauer because Blauer "retain[ed] his title as legal counsel and [he] maintained the same pay and pay range."

¶ 11 Subsequently, Blauer appealed DWS's decision to CSRB, the administrative review board for career service employee grievances. On November 12, 2003, CSRB refused jurisdiction over Blauer's claim, contending that DWS had not demoted Blauer. Blauer requested reconsideration of CSRB's declination of jurisdiction on December 2, 2003. CSRB denied Blauer's motion for reconsideration on December 22, 2003.

¶ 12 In January 2004, Blauer filed a complaint in district court, appealing CSRB's denial of jurisdiction over his grievance. On August 16, 2004, the district court (1) denied Blauer's motion for summary judgment to

the extent that the court did not find DWS's alteration of Blauer's job responsibilities to a full-time adjudicator constituted a demotion; (2) granted DWS's cross-motion for summary judgment, affirming CSRB's decision that it lacked jurisdiction because DWS did not demote Blauer; (3) denied DWS's motion to dismiss for lack of subject matter jurisdiction; and (4) remanded to CSRB Blauer's claims related to alleged violations of the Personnel Management Act. Both Blauer and DWS appeal.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 13 Blauer and DWS assert separate grounds for appeal. Blauer argues that the trial court erred in denying Blauer's motion for summary judgment, and in granting DWS's cross-motion for summary judgment, as to the issue of whether DWS "demoted" Blauer. Blauer asserts the trial court incorrectly concluded that CSRB properly declined jurisdiction over Blauer's grievance, erroneously determining that DWS did not demote Blauer as a matter of law under Utah Code section 67–19a–302(1). *See* Utah Code Ann. § 67–19a–302(1). "To determine whether a trial court properly granted summary judgment, we review the trial court's legal conclusions for correctness, affording those legal conclusions no deference." *Ault v. Holden,* 2002 UT 33, ¶ 15, 44 P.3d 781. Summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Utah R. Civ. P. 56(c).

■ ¶ 14 Alternatively, DWS contends the trial court erred in denying DWS's motion to dismiss for lack of subject matter jurisdiction. DWS argues that under the Utah Administrative Procedures Act (UAPA), Blauer's failure to name CSRB as a party respondent abolished the trial court's subject matter jurisdiction. "Whether a trial court has subject matter jurisdiction presents a question of law[,] which we review 'under a correction of error standard, giving no particular deference to the trial court's determination.'" *Case v. Case,* 2004 UT App 423, ¶ 5,

103 P.3d 171 (quoting *Barton v. Barton,* 2001 UT App 199, ¶ 7, 29 P.3d 13).

## ANALYSIS

### A. Subject Matter Jurisdiction

■■ ¶ 15 Since jurisdiction " 'is a threshold issue, we address jurisdictional questions before resolving other claims.' " *Fisher v. Fisher,* 2003 UT App 91, ¶ 15, 67 P.3d 1055 (quoting *Housing Auth. v. Snyder,* 2002 UT 28, ¶ 11, 44 P.3d 724). Here, DWS argues the trial court lacked subject matter jurisdiction because Blauer failed to name CSRB as a party respondent in his appeal to the district court.

¶ 16 Whether the UAPA requires a plaintiff appellant to name an administrative review board, here CSRB, as party respondent on appeal of that board's decision to the district court, is an issue of first impression in Utah.

¶ 17 Section 63–46b–15 of the UAPA states that "[t]he district courts have jurisdiction to review by trial de novo all final agency actions resulting from informal adjudicative proceedings." Utah Code Ann. § 63–46b–15(1)(a) (2004). DWS's primary argument for why CSRB is a requisite party respondent on an appeal from a CSRB decision to the district court derives from this UAPA jurisdictional prerequisite of "final agency action." *Id.* DWS contends that because the Utah Grievance and Appeals Procedure Act specifically designates CSRB as "the final administrative body to review appeals from career service employees and agencies," *see* Utah Code Ann. § 67–19a–202(1)(a) (2004), its decision constitutes the "final agency action." Therefore, DWS maintains, CSRB's issuance of the final agency action procedurally demands that CSRB be named a party respondent on appeal.

¶ 18 However, the language of UAPA section 63–46b–15(1)(a) requires only that a final agency action *result* from an informal adjudicative proceeding in order for the district court to assert jurisdiction. *See* Utah Code Ann. § 63–46b–15(1)(a). Here, Blauer does not dispute DWS's contention that CSRB's decision resulted in a final agency action.

Thus, it is not evident, and DWS has failed to demonstrate, how the UAPA's limiting of district court jurisdiction to final agency actions automatically imposes the jurisdictional prerequisite of naming the reviewing board, which issues that final agency action, as respondent on an appeal of its own decision.

¶ 19 However, other sections of the UAPA support DWS's position. For example, UAPA section 63–46b–14(3) requires that "[a] party shall file a petition for judicial review of final agency action within 30 days after the date that the order constituting the final agency action is issued," and that "[t]he petition shall name the agency and all other appropriate parties as respondents." Utah Code Ann. § 63–46b–14(3)(a)–(b) (2004). As DWS suggests, a joint reading of these two subsections suggests that the plaintiff petitioner must name the agency issuing the final agency action in addition to the party defendant to the adjudicative proceeding.

¶ 20 Similarly, UAPA section 63–46b–15 states that a petition for judicial review by the district courts of an informal adjudicative proceeding "shall be a complaint governed by the Utah Rules of Civil Procedure." *Id.* § 63–46b–15(2)(a). Such a complaint "shall include [among other things]: . . . the name and mailing address of the respondent agency; . . . the title and date of the final agency action to be reviewed; . . . [and the] identification of the persons who were parties in the informal adjudicative proceedings that led to the agency action." [1] *Id.* § 63–46b–15(2)(a)(ii)–(iv). The language of this section of the statute seemingly delineates between a respondent agency and a defendant party to the adjudicative proceeding leading to the agency action, suggesting that the respon-

dent agency and the defendant party agency are considered distinct entities.

¶ 21 However, in contrast to statute sections 63–46b–14(3)(a)–(b) and 63–46b–15(2)(a), discussed above, section 63–46b–2 defines "respondent" as "a person against whom an adjudicative proceeding is initiated." Utah Code Ann. § 63–46b–2(1)(i) (2004). Under the UAPA, an "adjudicative proceeding" is "an agency action or proceeding described in Section 63–46b–1." [2] *Id.* § 63–46b–2(1)(a) (internal quotations omitted). Section 63–46b–1 does not describe judicial review by the district court as an agency action or proceeding, implying that the appropriate respondent agency on appeal is the defendant agency to the original adjudicative proceeding, not the reviewing administrative board. *See* Utah Code Ann. § 63–46b–1(1)(a) (2004). Notably, the UAPA also acknowledges the existence of a "superior agency" and defines such an agency as "an agency required or authorized by law to review the orders of another agency." Utah Code Ann. § 63–46b–2(1)(j). Consequently, sections 63–46b–14(3)(a)–(b) and 63–46b–15(2)(a) appear to conflict with section 63–46b–2, rendering the statute ambiguous as to whether a reviewing board, such as CSRB, must be named respondent on appeal to the district court.

¶ 22 Due to the apparent ambiguity of the language of the UAPA, we look to legislative history, case law of other jurisdictions, and policy considerations. *See Vigos v. Mountainland Builders, Inc.*, 2000 UT 2, ¶ 13, 993 P.2d 207 ("[O]nly if there is ambiguity [in a statute] do we look beyond the plain language to legislative history or policy considerations." (citation omitted)).

---

**1.** The Utah Administrative Procedures Act (UAPA) defines "person" as "an individual, group of individuals, partnership, corporation, association, political subdivision or its units, governmental subdivision or its units, public or private organization or entity of any character, or another agency." Utah Code Ann. § 63–46b–2(1)(g) (2004). Under the UAPA, "party" is defined as "the agency or other person commencing an adjudicative proceeding, all respondents, all persons permitted by the presiding officer to intervene in the proceeding, and all persons authorized by statute or agency rule to participate

as parties in an adjudicative proceeding." *Id.* § 63–46b–2(1)(f).

**2.** Utah Code section 63–46b–1(1) provides that the UAPA applies to every state agency and governs "(a) state agency action that determines the legal rights, duties, privileges, immunities, or other legal interests of an identifiable person, including agency action to grant, deny, revoke, suspend, modify, annul, withdraw, or amend an authority, right, or license; and (b) judicial review of the action." Utah Code Ann. § 63–46b–1(1)(a)–(b) (2004).

¶ 23 While no Utah court has specifically addressed whether a reviewing board, such as CSRB, must be named respondent on an appeal to the district court of the reviewing board's own decision, the Utah Supreme Court has noted that agencies performing quasi-judicial functions are not aggrieved parties with standing to appeal without statutory authorization.[3] *See Utah Dep't of Bus. Regulation v. Public Serv. Comm'n,* 614 P.2d 1242, 1253 (Utah 1980). In *Utah Department of Business Regulation v. Public Service Commission,* the supreme court defined a quasi-judicial function as "one involving the exercise of discretion and requiring notice and hearing." *Id.* at 1254 (citations omitted).

¶ 24 Section 67–19a–202 of the Utah Grievance and Appeals Procedure Act defines the powers and jurisdiction of CSRB. *See* Utah Code Ann. § 67–19a–202. Under this section, it is clear that the primary function of CSRB as "the final administrative body to review appeals from career service employees" is quasi-judicial.[4] *Id.* § 67–19a–202(1)(a).

¶ 25 Other jurisdictions that have specifically addressed whether a reviewing board is a requisite respondent on appeal of its own decision have held that "[a]bsent a positive legislative grant of authority to the board to defend its decisions, ... the board is not a proper party defendant to appeals from its decisions" to the district court. *Inhabitants of Boothbay Harbor v. Russell,* 410 A.2d 554, 560 (Me.1980). "[A]n entity such as a personnel board that acts in a quasi-judicial capacity may not be considered a party to an appeal regarding any matter in which the entity has acted in a quasi-judicial capacity." *City of Dothan Pers. Bd. v. DeVane,* 860 So.2d 881, 889 (Ala.Civ.App.2002); *see also Montoya v. Department of Fin. & Admin.,* 98 N.M. 408, 649 P.2d 476, 480 (Ct.App.1982) (holding that where state personnel board acted in a quasi-judicial capacity, the board was not an indispensable party to an appeal of its own decision); *Nolan v. Snohomish County,* 59 Wash.App. 876, 802 P.2d 792, 795 (1990) (concluding that an administrative reviewing board need not be made party to a review of its own determinations); *Antelope Valley Improvement & Serv. Dist. v. State Bd. of Equalization,* 992 P.2d 563, 567 (Wyo. 1999) ("[A] board exercising judicial or quasi[-]judicial functions, not being a party to its proceedings, and not having any legal interest in maintaining its determination, can neither appeal from a[n] ... order of a court reversing the proceedings nor be heard on appeal.") (quoting 4 C.J.S. *Appeal and Error* § 175 (1957)).

¶ 26 Furthermore, public policy supports the conclusion that a quasi-judicial administrative board should not be named as respondent in an appeal of its own decision. "If [CSRB] were deemed to be a party in this matter, [CSRB] would function as a litigant, taking an adversarial position [against] a party that had appeared before it in a quasi-judicial proceeding." *DeVane,* 860 So.2d at 891. No section of the Grievance and Ap-

---

**3.** The Utah Supreme Court has also recently held that in appeals of formal administrative hearings, "the only jurisdictional requirement is the timely filing of the pleading initiating appellate review." *Harley Davidson v. Workforce Appeals Bd.,* 2005 UT 38, ¶ 14, 116 P.3d 349 (concluding that rule 14 of the Utah Rules of Appellate Procedure, governing party appeals of administrative agency actions, "should be interpreted to harmonize with rule 3(a) [of the Utah Rules of Appellate Procedure]," *see id.,* which explicitly states that "[f]ailure of an appellant [when appealing the decision of a trial court or juvenile court] to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal," *see id.* at ¶ 9). Although *Harley* is not directly on point, we find the policy justifications behind the *Harley* holding to support a finding that the failure to name the proper party respondent on appeal, even if we were to deem CSRB as the appropriate party respondent, is not jurisdictionally fatal to Blauer's claim.

**4.** "In conjunction with any inquiry, investigation, hearing, or other proceeding, any member of [CSRB] may: (a) administer oaths; (b) certify official acts; (c) subpoena witnesses, documents, and other evidence; and (d) grant continuances pursuant to board rule." Utah Code Ann. § 67–19a–202(3)(a)-(d) (2004). The Grievance and Appeals Procedure Act also grants CSRB rulemaking authority. *See* Utah Code Ann. § 67–19a–203 (2004); *see also Montoya v. Department of Fin. & Admin.,* 98 N.M. 408, 649 P.2d 476, 480 (Ct.App.1982) ("In hearing administrative appeals by employees from agency action as distinguished from its function in adopting rules and creating policy, the State Personnel Board acts in a quasi-judicial capacity.").

peals Procedure Act or the UAPA suggests that CSRB has the power "to advance the position of one of the parties that has appeared before it." *Id.* Moreover, requiring that CSRB be named a respondent party, and thus an advocate in an appeal of its own decision, would annihilate the board's impartiality.

¶ 27 Thus, we conclude that Blauer's failure to name CSRB in his appeal to the district court of CSRB's decision denying jurisdiction over Blauer's grievance did not abolish the district court's subject matter jurisdiction.

### B. Demotion

¶ 28 On appeal, Blauer asserts the trial court erred in denying Blauer's motion for summary judgment, and in granting DWS's cross-motion for summary judgment, as to the issue of whether DWS demoted Blauer as a matter of law under Utah Code section 67–19a–302(1). *See* Utah Code Ann. § 67–19a–302(1).

¶ 29 In granting DWS's motion for summary judgment, the trial court concluded that CSRB correctly denied jurisdiction over Blauer's grievance where Blauer did not meet the jurisdictional threshold of establishing DWS had demoted him. Under the Utah Administrative Code (UAC), a "demotion" is defined as "[a]n action resulting in a salary reduction on the current salary range or the movement of an incumbent from one job or position to another job or position having a lower salary range, which may include a reduction in salary."[5] Utah Admin. Code R477–1–1(32). Therefore, in order for an employee to be demoted under rule 477–1–1(32), an employee must either (1) receive a salary reduction or (2) move to a job or position with a lower salary range. *See id.*

¶ 30 The trial court ruled that under this definition, DWS did not demote Blauer where Blauer "was never formally reclassified and ... [Blauer's] salary, salary range, and retirement benefits were completely unaffected by the change in his assignment." Blauer argues that the trial court's ruling

was erroneous and that despite no change in his official title or salary, the alteration of Blauer's job responsibilities effectively resulted in Blauer's job activities and duties mirroring those of a less-esteemed job that required lower qualifications, demanded less skill, and was placed in a lower salary range.

¶ 31 In the present case, we must decide whether, under UAC rule 477–1–1(32), *see id.*, employees are demoted when, without a change in salary, title, or benefits, they are assigned to work full-time in a job function, which they had performed part-time in the past, but which is also performed as a full-time responsibility by less qualified employees.

¶ 32 As noted above, under the UAC, a demotion results from an employee's movement from one position to another job or position with a lower salary range. *See id.* Here, the record clearly indicates that from 1999–2003, DWS assigned Blauer, along with another Legal Enforcement Counsel III, to unemployment adjudications. While the number of hearings Blauer presided over varied from 1999–2003, the record demonstrates that over this four-year period, presiding over adjudications was a job function DWS consistently assigned to Blauer. For example, in 2000, DWS assigned Blauer six to twenty hearings a week for thirty-six weeks. Likewise, in 2003, prior to its instructions that Blauer conduct adjudications full-time, DWS assigned Blauer to an average of eight hearings a week over the course of nineteen weeks. Because of Blauer's previous, and not uncommon, assignments to adjudications, DWS claims that in reapportioning Blauer's job responsibilities from part-time to full-time adjudicator, DWS did nothing more than extend one of Blauer's core job functions, in response to varying department needs. We agree and conclude that DWS's assignment of Blauer to full-time adjudications, a job function DWS had delegated to Blauer, and other Legal Enforcement Counsel III, in the past, did not constitute a

---

**5.** "Administrative adjustments and reclassifications are not included in the definition of a

demotion." Utah Admin. Code R477–1–1(32).

demotion as defined under rule 477–1–1(32). *See id.*

¶ 33 In support of his argument that DWS effectively demoted him, Blauer relies on our decision in *Draughon v. Utah Department of Financial Institutions*, 1999 UT App 42, 975 P.2d 935. In *Draughon*, we determined that a career service employee's involuntary reassignment from the position of Financial Institutions Manager, with the working title of "Supervisor of Savings and Loans," to the position of Financial Institutions Specialist, with the working title of "Senior Examiner," constituted a demotion. *See id.* at ¶¶ 2,10. We held in *Draughon* that the employee's formal movement in positions resulted in a demotion despite no immediate loss in pay, where his reassignment resulted in him working in a position of "less status, fewer responsibilities, a lower pay range, and ... ultimately ... lower retirement benefits." *Id.* at ¶ 10.

¶ 34 Although we agree with Blauer that certain similarities exist between Blauer's situation and that of the employee in *Draughon*, the facts in *Draughon* are notably distinguishable from the present case. Significantly, unlike DWS, the employer in *Draughon* formally reassigned the employee to a new position, resulting in an official change in the employee's job title. *See id.* at ¶ 2. Additionally, the employee's formal change in position in *Draughon*, placed the employee in a lower pay range, consequently resulting in lower retirement benefits for the employee. *See id.* at ¶ 10. Here, as discussed above, there was no change in job or position, but rather a reallocation by DWS of Blauer's then existing job responsibilities. Accordingly, and dissimilar to the employee in *Draughon*, Blauer's assignment to full-time adjudicator did not result in Blauer being placed in a lower salary range or in him receiving lower retirement benefits.

¶ 35 Our decision is buttressed by the adverse policy implications of concluding that DWS demoted Blauer. First, a decision in favor of demotion could limit a supervisor's capability to alter responsibilities based on changing department needs within a given set of job functions, hindering management's flexibility. Second, a finding of demotion would place limitations on an employer's ability to make probationary assignments. Finally, in making a demotion determination, we would provide employees with a means of claiming "demotion" anytime an employer assigns them to a task they do not like or wish to perform.

¶ 36 In sum, based upon the clear language of UAC rule 477–1–1(32), defining demotion, *see* Utah Admin. Code R477–1–1(32), and in light of important policy considerations, we conclude DWS did not demote Blauer, and thus, CSRB did not err in declining jurisdiction over Blauer's grievance.

## CONCLUSION

¶ 37 In conclusion, we hold the trial court did not err in asserting subject matter jurisdiction despite Blauer's failure to name CSRB as a party respondent on appeal of CSRB's decision to the district court. Additionally, we conclude the trial court correctly granted DWS's motion for summary judgment, where DWS did not demote Blauer as a matter of law and CSRB therefore properly declined jurisdiction over Blauer's grievance.

¶ 38 WE CONCUR: PAMELA T. GREENWOOD and CAROLYN B. McHUGH, Judges.