2006 UT App 2

**John D. SORGE, Petitioner,**

v.

**OFFICE OF the ATTORNEY GENERAL, Respondent.**

**No. 20041046–CA.**

Court of Appeals of Utah.

Jan. 6, 2006.

Rehearing Denied Jan. 24, 2006.

---

John D. Sorge, Salt Lake City, Petitioner Pro Se, and J. Kevin Murphy, Kipp & Christian, Salt Lake City, for Petitioner.

Mark L. Shurtleff, Attorney General's Office, Brent A. Burnett, Assistant Attorney General, and Robert W. Thompson, Career Service Review Board, Salt Lake City, for Respondent.

Before GREENWOOD, Associate Presiding Judge, and McHUGH, and ORME, JJ.

## OPINION

GREENWOOD, Associate Presiding Judge:

¶1 Petitioner John D. Sorge appeals the decision of the Career Service Review Board (the CSRB) upholding Petitioner's termination of employment with the State of Utah's Office of the Attorney General (the Department). Petitioner argues that (1) his due process rights were violated when he was prevented from calling witnesses, (2) the CSRB erred in determining that the decision to terminate Petitioner was not an abuse of discretion, and (3) his sanction was disproportionate. We affirm.

## BACKGROUND

¶2 In April 1999, Petitioner began working as an assistant attorney general in the Child Protection Division of the Department in the Ogden office. Petitioner worked under the supervision of Mark May, Section Chief of the Child Protection Division's Northern Region. In March 2000, Petitioner received sexual harassment training and affirmed that he understood the sexual harassment policy of the Department.

¶3 In October 2001, Petitioner was placed on a corrective action plan by May and Division Chief Dave Carlson in an attempt to improve his interactions with others, particularly with regard to conduct offensive to coworkers and clients. At a performance evaluation in June 2002, Petitioner was informed that his performance appraisal was to be "unsuccessful" for the year, in part because of complaints from coworkers regarding his conduct. At that time, Petitioner was again provided notice that he must not engage in any sexually explicit comments or other conduct offensive to coworkers and clients.

¶4 Petitioner disputed the allegations leading to both the corrective action plan and the "unsuccessful" performance evaluation. However, no hearing ever took place to resolve those disputes.

¶5 On July 1, 2002, Petitioner was transferred from the Ogden office to the Clearfield office. On July 23, 2002, Petitioner found a new file on his desk that included a Division of Child and Family Services (DCFS) case worker's log containing sexually graphic language regarding the abuse of the child victim. Petitioner took the file to the office of paralegal Jennifer Howell where he initially spoke to her about the proper venue and jurisdiction in the case. Petitioner then read parts of the log aloud and commented on some of the sexually graphic details.

¶6 Petitioner remained in Howell's office for approximately forty-five minutes to one hour, during which time Howell repeatedly attempted to call the case worker to answer any questions Petitioner had about the case. However, she was unable to contact the case worker. Howell stated that she was offended and upset by Petitioner's actions. She further stated that she felt harassed because there was no reason for Petitioner to read such sexually explicit material to her.

¶7 When Assistant Attorney General Janice Ventura returned to the office from court that afternoon, Howell reported the incident to her. Ventura and the office secretary,

Lori Trivino, later testified that Howell was visibly upset following this incident. Ventura gave Howell permission to leave the office whenever Howell and Petitioner would otherwise be alone there together.

¶ 8 Subsequently, the Department determined that an investigation into the matter was warranted and assigned two investigators to review the matter. When interviewed by the investigators, Petitioner alternatively denied that the incident took place or stated that he did not remember reading the sexually explicit details of the file to Howell.

¶ 9 On August 28, 2002, Petitioner again made comments to Howell that she found culturally and sexually inappropriate. In reference to a case involving a minor Hispanic female who was sexually abused by her stepfather, Petitioner stated to Howell that, in the Hispanic culture, it was culturally acceptable for younger Hispanic females to have sex with older Hispanic males. Howell told Petitioner this statement was untrue. Trivino witnessed the exchange of comments between Petitioner and Howell.

¶ 10 Howell immediately reported this incident to Ventura. Later that afternoon, Howell sent May an email regarding the conversation between herself and Petitioner. The investigators also included this incident in their investigation.

¶ 11 Petitioner subsequently attributed his statement to Darryl Armstrong, a DCFS caseworker in Bountiful. Armstrong, however, testified that it was Petitioner who had commented to him on an earlier occasion that it was acceptable in the Hispanic culture for older Hispanic males to have relationships with younger Hispanic females. Armstrong further testified that his wife is Hispanic and that he told Petitioner that, although that may be a perception about the Hispanic community, it was not a perception accepted by that community.

1. The investigators also reported a third incident, where Petitioner made statements about concealed weapons, which some of his coworkers found offensive.

2. Procedures for state employee employment grievances are governed by the Utah State Personnel Management Act. *See* Utah Code Ann.

¶ 12 After reviewing the investigators' report[1] and Petitioner's history in the Department, Petitioner's supervisors decided to terminate Petitioner's employment. Petitioner's supervisors issued Petitioner a Notice of Intent to Terminate Employment, which identified the incidents in the Clearfield office as well as Petitioner's history of inappropriate behavior within the office, as the reasons for his termination. Petitioner subsequently appealed the decision to Step 4 of the grievance process,[2] to Attorney General Mark Shurtleff. After a hearing before Shurtleff's designee, Shurtleff issued his Decision to Terminate Petitioner's employment on October 17, 2002.

¶ 13 Petitioner appealed this decision to the CSRB. A Step 5 hearing was subsequently conducted by a CSRB Hearing Officer. The Hearing Officer stated that, because Petitioner's termination was based solely on three incidents in the Clearfield office, the Hearing Officer would consider only those incidents. Ultimately, the Hearing Officer found that the facts supported the Department's decision concerning two of the three incidents that led to Petitioner's termination.[3] The Hearing Officer found that Petitioner was terminated on the basis of the incidents of July 23 and August 28, 2002.

¶ 14 Thereafter, Petitioner appealed the decision of the Hearing Officer to the CSRB for a Step 6 appeal hearing. After hearing Petitioner's appeal, the CSRB sustained the Hearing Officer's findings and conclusions and affirmed Petitioner's termination. Petitioner appeals.

## ISSUES AND STANDARD OF REVIEW

■ ¶ 15 On appeal, Petitioner raises three issues. First, he argues that his due process rights were violated because he was not allowed to present witnesses and evidence concerning earlier disciplinary actions.

§§ 67–19a–101 to –408 (2004); Utah Admin. Code R137–1–1 to –23.

3. The CSRB Hearing Officer determined that the third incident, Petitioner's discussion of concealed weapons during a staff meeting, did not constitute a violation of policy or standards of conduct.

Next, he contends that there was inadequate factual support for the CSRB's decision to uphold Petitioner's termination. Finally, he alleges that his sanction was disproportionate.[4]

¶ 16 "As a threshold matter, we must determine the appropriate deference required of the CSRB in reviewing the Department's personnel actions." *Utah Dep't of Corr. v. Despain*, 824 P.2d 439, 442 (Utah Ct.App. 1991). "An evidentiary/step 5 hearing shall be a new hearing for the record ... with both parties being accorded full administrative due process...." Utah Admin. Code R140–1–21(3).

■ ¶ 17 In reviewing the CSRB's decision, this court must determine whether, under the Utah Administrative Procedures Act, *see* Utah Code Ann. §§ 63–46b–1 to –23 (2004 & Supp.2005), "the CSRB, 'by virtue of its experience or expertise, is in a better position than [we are] to give effect to the regulatory objective to be achieved.'" *Despain*, 824 P.2d at 443 (citation omitted) (alteration in original). "If so, we review the CSRB's decision to see if it was reasonable or rational. If not, we review it for correctness." *Id.* In the case at hand, the agency decision involved "mixed questions of law and fact." *Id.* at 443 n. 8. Because this is the type of decision "in which the agency's special expertise puts it in a better position than an appellate court to evaluate the circumstances of the case in light of the agency mission," *id.*, we apply a deferential standard of review to the CSRB's decision. *See id.*

### I. Due Process

■ ¶ 18 Petitioner first argues that his due process rights were violated because he was not allowed to call witnesses or present evidence concerning disciplinary actions occurring prior to the July 23 and August 28, 2002 incidents that served as the basis for Petitioner's termination. "Despite the flexibility of administrative hearings, there re-

mains the 'necessity of preserving fundamental requirements of procedural fairness in administrative hearings.'" *Tolman v. Salt Lake County Attorney*, 818 P.2d 23, 28 (Utah Ct.App.1991) (citation omitted). " '[D]ue process demands a new trial when the appearance of unfairness is so plain that we are left with the abiding impression that a reasonable person would find the hearing unfair.'" *Id.* (quoting *Bunnell v. Industrial Comm'n*, 740 P.2d 1331, 1333 (Utah 1987)).

¶ 19 Specifically, Petitioner maintains that his hearing was unfair because the CSRB Hearing Officer's decision upholding Petitioner's termination included consideration of earlier disciplinary actions, evidence of which was excluded from the hearing. These disciplinary actions included the corrective action plan and unsatisfactory performance review. Petitioner contends that the Hearing Officer's preclusion of evidence involving the accuracy of Petitioner's employment record and the validity of his prior disciplinary record was a denial of his due process rights. We do not agree.

¶ 20 The Hearing Officer and the CSRB found that the Department's decision to terminate Petitioner was based on three incidents that occurred after he was transferred to the Clearfield office, and upheld that termination on the basis of the July 23 and August 28, 2002 incidents. The record indicates, however, that disciplinary action based on the prior incidents was used only to demonstrate that Petitioner had been provided notice that his behavior was a concern. Furthermore, there is no indication in the record that Petitioner's earlier behavior was considered for any purpose other than showing that Petitioner knew or should have known that his conduct would be closely scrutinized by the Department, and that improper conduct could jeopardize his employment.

■ ¶ 21 Under due process, " '[e]very person who brings a claim in a court or at a hearing held before an administrative agency

4. In its brief, the Department argued that Petitioner's failure to name the CSRB as a party to the appeal deprived this court of jurisdiction. However, in *Blauer v. Department of Workforce Services*, 2005 UT App 488, involving facts similar to those in the present case, this court determined that the failure to name the CSRB as a party in an appeal did not destroy jurisdiction over the plaintiff's appeal. *See id.* at ¶ 27. Accordingly, the Department abandoned this argument on appeal.

has a ... right to receive a fair trial in front of a fair tribunal.'" *Id.* (quoting *Bunnell*, 740 P.2d at 1333). The Hearing Officer in this case expressly stated that Petitioner's termination was based on the incidents of July 23 and August 28, 2002. The Hearing Officer's statement is supported by the findings of fact, which do not mention earlier events involving Petitioner. Therefore, Petitioner has not demonstrated that he was denied a fair hearing before an impartial tribunal. As a result, his due process argument fails.

## II. Abuse of Discretion

¶ 22 Petitioner next argues that the witness testimony and evidence were so inadequate that it was an abuse of discretion for the CSRB to uphold the Department's decision to terminate Petitioner's employment. However, Petitioner appears to misapprehend the deferential standard the CSRB applies to agency decisions. "The CSRB is restricted to determining whether there is factual support for the Department's charges against [a grievant] and, if so, whether the Department's sanction of dismissal is so disproportionate to those charges that it amounts to an abuse of discretion." *Career Serv. Review Bd. v. Utah Dep't of Corr.*, 942 P.2d 933, 942 (Utah 1997) (alteration in original). An agency abuses its discretion when it reaches an outcome "that is clearly against the logic and the effect of such facts as are presented in support of the application, or against the reasonable and probable deductions to be drawn from the facts disclosed upon the hearing." *Tolman v. Salt Lake County Attorney*, 818 P.2d 23, 26 (Utah Ct. App.1991) (quotations and citations omitted).

¶ 23 For example, Petitioner alleges that it was an abuse of discretion for his termination to be upheld in spite of the Hearing Officer's statement that some witnesses who testified against Petitioner lacked credibility. However, Petitioner fails to mention that the Hearing Officer concluded that Petitioner was even more lacking in credibility and that his testimony "has an appearance of being self-serving." Moreover, the Hearing Officer made express findings concerning the July 23 and August 28, 2002 incidents. With regard

to the July 23 incident, the Hearing Officer expressly found that Petitioner "proceeded to read sexually graphic material to Ms. Howell" and that Howell felt offended and violated when Petitioner read the material to her, that she became sick to her stomach while he was reading the material, and that she cried when he left her office. Likewise, concerning the August 28 incident, the Hearing Officer determined that it was Petitioner who made an offensive remark regarding the Hispanic culture. Both the Hearing Officer and the CSRB rejected Petitioner's claim that he was only repeating a comment made by Armstrong.

¶ 24 Ultimately, the Hearing Officer concluded that the Department's allegations about the incidents on July 23 and August 28, 2002, were supported by evidence in the record and that they violated office policy and instructions given to Petitioner. The Hearing Officer concluded that these incidents and Petitioner's response to the investigation and to management "caused management to lose confidence and trust in [Petitioner's] ability to comply with [the Department's] policies." Upon reviewing the record, the CSRB sustained the conclusions of the Hearing Officer, determining that Petitioner was terminated for good cause after he had been provided notice that offensive behavior would not be tolerated.

¶ 25 Given the facts of this case, Petitioner has not demonstrated that the CSRB's decision upholding Petitioner's termination exceeded "'the legal standards set by appellate courts,'" *Id.* (citation omitted), or was not reasonable and rational. *See Utah Dep't of Corr. v. Despain*, 824 P.2d 439, 443 (Utah Ct.App.1991). Consequently, Petitioner's abuse of discretion argument also fails.

## III. Proportionality

¶ 26 Finally, Petitioner alleges that his termination was disproportionate. Before considering Petitioner's argument, we note that this court has previously utilized what appears to be two different burden of proof standards with regard to proportionality. In *Lunnen v. Department of Transportation*, we stated that the initial burden is on the agency to show that the discipline was

not disproportionate to the conduct. *See* 886 P.2d 70, 73 (Utah Ct.App.1994). Conversely, in *Kelly v. Salt Lake City Civil Service Commission*, 2000 UT App 235, 8 P.3d 1048, relying on the reasoning in Justice Durham's dissenting opinion in *SEMECO Industries v. Utah State Tax Commission*, 849 P.2d 1167, 1174 (Utah 1993), we explained that "the burden is on [a petitioner] to establish a prima facie case that the [agency] acted inconsistently in imposing sanctions by presenting sufficient evidence from which [the CSRB] could reasonably find a relevant inconsistency." *Kelly*, 2000 UT App 235 at ¶ 30, 8 P.3d 1048. We further explained that "[a petitioner] must, at a minimum, carry the burden of showing some meaningful disparity of treatment between [himself] and other similarly situated employees." *Id.*

¶ 27 As explained below, Petitioner's argument fails under either the *Lunnen* or *Kelly* standards. Both parties concede that it is not possible to compare Petitioner's discipline to others similarly situated. Therefore, we review the CSRB's decision by applying a different portion of *Lunnen* that places the initial burden on the Department to show that Petitioner's termination was not disproportionate to his conduct. *See Lunnen*, 886 P.2d at 73.

¶ 28 In *Ogden City Corp. v. Harmon*, 2005 UT App 274, 116 P.3d 973, we explained that "Utah law has provided little guidance on the precise factors used to balance the proportionality of the punishment to the offense." *Id.* at ¶ 18. However, we noted that "an exemplary service record and tenuous evidence of misconduct may tip the balance against termination." *Id.* Conversely, "dishonesty [ ] or a series of violations accompanied by apparently ineffective progressive discipline may support termination." *Id.* (citation omitted).

¶ 29 We then proceeded to enumerate factors courts in other jurisdictions have considered, including:

(a) whether the violation is directly related to the employee's official duties and significantly impedes his or her ability to carry out those duties; (b) whether the offense was of a type that adversely affects the public confidence in the department; (c) whether the offense undermines the morale and effectiveness of the department; or (d) whether the offense was committed willfully or knowingly, rather than negligently or inadvertently. Courts have further considered whether the misconduct is likely to reoccur.

*Id.* (citations omitted).

¶ 30 Applying these considerations to the facts of the present case, we conclude that the termination of Petitioner was not disproportionate. Petitioner's actions meet all four of the factors listed in *Harmon. See id.* For example, Petitioner was terminated on the basis of the July 23 and August 28, 2002 incidents, both of which occurred at the workplace. Further, Petitioner had received prior notice that his behavior would be scrutinized. Moreover, Petitioner knew or should have known that improprieties would not be tolerated by the Department.

¶ 31 In this case, it was not possible to compare Petitioner's discipline to others similarly situated. The Department said there were none and Petitioner does not contend otherwise. Therefore, we examine the discipline imposed only in the context of the misconduct and role and purpose of the Department.[5] We note that " '[d]iscipline imposed for employee misconduct is within the sound discretion of the [agency head],' " which will be reversed "only when the punishment is 'clearly disproportionate' to the offense, and 'exceeds the bounds of reasonableness and rationality.' " *Id.* at ¶ 17 (citations omitted).

¶ 32 In the instant case, "because the Department's allegations were supported by the facts and because we [are] unable to say that the discipline [is] clearly dispropor-

---

5. Furthermore, for reasons outlined in the body of the opinion, Petitioner cannot meet the threshold burden "of showing some meaningful disparity of treatment between [himself] and other similarly situated employees." *Kelly v. Salt Lake City Civil Serv. Comm'n*, 2000 UT App 235, ¶ 30,

8 P.3d 1048. Consequently, even if we were to use the *Kelly* standard rather than the *Lunnen* standard, he would still lose on this issue. *See Lunnen v. Utah Dep't of Transp.*, 886 P.2d 70, 73 (Utah Ct.App.1994).

tionate," *Lunnen v. Utah Dep't of Transp.*, 886 P.2d 70, 73 (Utah Ct.App.1994), Petitioner's disproportionality argument also fails. The facts, as confirmed by the CSRB, establish the Petitioner's behavior was detrimental to the workplace and impeded the Department in performing its duties, particularly in the Division where Petitioner was employed.[6]

## CONCLUSION

¶ 33 In sum, Petitioner's past incidents leading to disciplinary action played no role in the Hearing Officer's decision. The Hearing Officer referred only to the fact that Petitioner's behavior resulted in his being on notice that management was concerned about his conduct. Petitioner's termination was based on the incidents of July 23 and August 28, 2002. Accordingly, Petitioner's due process rights were not violated when he was precluded from calling witnesses or presenting additional evidence about the earlier incidents. Additionally, there was no abuse of

discretion in the CSRB's decision to uphold Petitioner's termination of employment because the decision was based on adequate evidence in the record. Finally, Petitioner was provided notice that his conduct would be scrutinized and that improprieties would not be tolerated, and the Department's action in terminating him was not an abuse of discretion. As a result, the termination of his employment was not a disproportionate sanction. Accordingly, we affirm.

¶ 34 WE CONCUR: CAROLYN B. McHUGH and GREGORY K. ORME, Judges.

---

**6.** Petitioner additionally alleges that his due process rights were violated because he was not permitted to call as a witness Steve Schwendiman, who acted as counsel for the Department and also participated in crafting Petitioner's termination letter. Because Petitioner has not cited relevant authority in support of this argument, we will not consider it. *See Smith v. Four Corners Mental Health Ctr., Inc.*, 2003 UT 23, ¶ 46, 70 P.3d 904.