IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| Lorin Blauer, | ) | OPINION |
| | ) | |
| Petitioner, | ) | Case No. 20101048-CA |
| | ) | |
| v. | ) | |
| | ) | F I L E D |
| Career Service Review Board and | ) | (April 19, 2012) |
| Department of Workforce Services, | ) | |
| | ) | 2012 UT App 120 |
| Respondents. | ) | |

-----

Original Proceeding in this Court

Attorneys:     Vincent C. Rampton, Salt Lake City, for Petitioner
                   Mark L. Shurtleff and Bridget K. Romano, Salt Lake City, for
                   Respondent Department of Workforce Services

-----

Before Judges Voros, Thorne, and Roth.

THORNE, Judge:

¶1      Lorin Blauer seeks judicial review of a memorandum decision issued by the Career Service Review Board (the Board), which affirmed a hearing officer's order denying all of Blauer's remaining grievance claims against his former employer, the Utah Department of Workforce Services (DWS). We uphold the Board's decision.

BACKGROUND

¶2     This matter originated in September 2003, when Blauer initiated a grievance claim alleging that DWS had demoted him from his Legal Counsel III position when his supervisor reassigned him to conducting unemployment insurance hearings on a full-time basis. The circumstances of Blauer's reassignment and ultimate termination by DWS can be briefly summarized. In 2003, Blauer was employed by DWS as Legal Counsel III, where he performed general legal work including the occasional conducting of unemployment insurance hearings. Blauer received annual performance reviews from 1999 to 2003 and updated performance plans in 1999–2000 and 2000–2001 but not thereafter. Prior to June 2003, Blauer's evaluations identified some problems with his performance but ultimately rated him as "successful."

¶3     In June 2003, Blauer received an "unsuccessful" job rating on his performance review. The stated reason for the unsuccessful rating was Blauer's continued inability to maintain the workload expected of him by DWS. The rating acknowledged Blauer's contention that his productivity problems were the result of health issues but also observed that Blauer had never procured an Americans with Disabilities Act (ADA) accommodation for his alleged physical disabilities. Blauer challenged the unsuccessful rating with an employee grievance, and DWS amended Blauer's 2003 job rating to successful on September 5, 2003.

¶4     In the course of challenging the unsuccessful rating, Blauer began the process of seeking an ADA accommodation for his health issues, which included sleep apnea, sciatica, and coronary artery disease. Blauer submitted various letters from his doctor in support of his request for accommodation. DWS denied Blauer's request by letter dated September 5, 2003.

¶5     On September 9, 2003, Blauer's supervisor issued a Notice of Reassignment (the Notice) assigning Blauer to conducting unemployment insurance hearings on a full-time basis. The Notice made clear that only Blauer's assigned duties were being changed, and not his job title, pay, or benefits. The Notice listed several factors that had gone into the reassignment decision, including Blauer's prior performance problems, his doctor's recommendation that he not be required to sit for more than an hour at a time, and feedback from his former clients and their current attorneys. The Notice also identified certain deficiencies in Blauer's prior performance for the stated purpose of

helping Blauer "understand this new assignment."  These deficiencies included Blauer's use of a signature stamp, his poor editing of his written work, and his potentially improper use of DWS wage data.  The Notice concluded by asserting that Blauer's new duties would allow him to better know what was expected of him and that the reassignment was "in the best interest of [DWS] for the reasons . . . stated above."

¶6    Blauer filed a second grievance, challenging the Notice as an effective demotion.  While the grievance was being addressed at the DWS level, Blauer went on sick leave and never returned to work, despite some efforts on his part to secure accommodations that would have allowed him to do so.  When Blauer failed to return to work for a period of one year, he was terminated.  In the meantime, DWS denied Blauer's second grievance, determining that the Notice did not constitute a demotion, and the Board upheld that determination.[1]

¶7    Since that decision, Blauer has been litigating his demotion claim and six other claims alleging that DWS violated various personnel rules.  The matter has repeatedly wound its way back and forth from the Board to the district court and this court.[2]  This court previously held that Blauer's reassignment did not constitute a demotion and that "DWS did nothing more than extend one of Blauer's core job functions, in response to varying department needs."  *See Blauer v. Department of Workforce Servs.* (*Blauer I*), 2005 UT App 488, ¶ 32, 128 P.3d 1204.  We did, however, ultimately remand Blauer's six claims of personnel rule violations to the Board for a hearing on their merits, enforcing a prior district court decision holding that those claims had been adequately preserved.  *See Blauer v. Department of Workforce Servs.* (*Blauer III*), 2008 UT App 84U, paras. 3–5 (mem.).  A hearing officer denied these claims after conducting a four-day hearing in 2009.  The Board upheld the hearing officer's decision, and Blauer now seeks judicial review in this court.

---

[1]In a motion to reconsider the Board's ruling, Blauer raised the additional allegations of personnel rule violations that are currently before this court.

[2]The present case marks the fourth occasion on which this court has examined the dispute between Blauer and DWS.  The previous three cases are *Blauer v. Department of Workforce Services* (*Blauer I*), 2005 UT App 488, 128 P.3d 1204; *Blauer v. Department of Workforce Services* (*Blauer II*), 2007 UT App 280, 167 P.3d 1102; and *Blauer v. Department of Workforce Services* (*Blauer III*), 2008 UT App 84U (mem.).

ISSUES AND STANDARDS OF REVIEW

¶8 Blauer first argues that the Board acted in contravention of this court's prior directions when it concluded that it lacked subject matter jurisdiction to consider his claim that he had been subjected to workplace discrimination on account of his disability.[3] "[I]issues that require interpretation of prior decisional precedents" are "questions of law which we review for correctness." *In re A.F.K.*, 2009 UT App 198, ¶ 16, 216 P.3d 980 (internal quotation marks omitted); *see also State v. Leyva*, 951 P.2d 738, 741 (Utah 1997) ("A lower court's interpretation of binding case law presents a question of law which we review for correctness.").

¶9 Next, Blauer argues that the Board erred when it determined that DWS had not improperly defined Blauer's job parameters. This issue presents a mixed question of law and fact "in which the agency's special expertise puts it in a better position than an appellate court to evaluate the circumstances of the case in light of the agency mission." *Sorge v. Office of the Attorney Gen.*, 2006 UT App 2, ¶ 17, 128 P.3d 566 (internal quotation marks omitted). Accordingly, "we apply a deferential standard of review to the [Board's] decision" and uphold it "if it was reasonable or rational." *Id.*

¶10 Finally, Blauer argues that the Board erred in determining that the Notice reassigning him was not a grievable written reprimand pursuant to Utah Code section 67-19a-202(1)(a). *See* Utah Code Ann. § 67-19a-202(1)(a) (2004).[4] This issue also presents a mixed question of law and fact implicating the Board's special expertise, and we likewise review this decision with deference for reasonableness and rationality. *See Sorge*, 2006 UT App 2, ¶ 17.

---

[3]Blauer also argues that the Board erred in excluding his rebuttal evidence concerning available workplace accommodation options. However, as this evidence went solely to Blauer's workplace discrimination claim, our determination that the Board lacked jurisdiction to consider that claim renders this argument moot.

[4]Utah Code section 67-19a-202 has since been amended and no longer allows for the grieving of written reprimands. *See* Utah Code Ann. § 67-19a-202(1)(a) (2011).

ANALYSIS

¶11     On judicial review, Blauer challenges the Board's dismissal of three of his six claims that DWS had violated personnel rules.[5]  The three claims currently before us are (1) Blauer's claim that his reassignment and DWS's failure to grant him an ADA accommodation constituted discrimination against him based on a disability and retaliation in violation of the then-existing provisions of Utah Administrative Code R477-15-1 to -3; (2) his claim that DWS failed to properly define his job parameters in violation of R477-10-1 to -2 of the Utah Administrative Code; and (3) his claim that the September 9, 2003 Notice reassigning his job duties constituted a grievable "written reprimand" pursuant to the then-existing Utah Code section 67-19a-202(1)(a).  We uphold the Board's dismissal of these claims.

        I.  The Board Lacked Jurisdiction over Blauer's Workplace Discrimination Claim

¶12     Blauer first argues that the Board erred in dismissing his workplace discrimination claim on the ground that it lacked jurisdiction to consider that claim. The Board based its jurisdictional decision on Utah Code sections 67-19-32 and 35A-5-107 and Utah Administrative Code R137-1-5.[6]  Utah Code section 67-19-32 provides that career service employees who allege workplace discrimination may pursue such claims by submitting a written grievance to the department head where the alleged act occurred and that employees who are dissatisfied with the response may then submit a complaint with the Utah Division of Antidiscrimination and Labor.  *See* Utah Code Ann. § 67-19-32(1), (3) (2011).  Section 34A-5-107(15) states that the Utah Antidiscrimination and Labor Act provides "the exclusive remedy under state law for employment discrimination based upon . . . disability."  *See* Utah Code Ann. § 34A-5-107(15)(i) (2011). And Utah Administrative Code R137-1-5 states, "Claims alleged to be based upon a legally prohibited practice as set forth in [Utah Code section] 34A-5-106,

_____

        [5]Blauer's other three claims involved allegations that DWS had assigned him to job tasks outside of his job description, failed to properly maintain and allow access to his personnel records, and improperly denied him administrative leave.  Blauer has not pursued these issues on judicial review.

        [6]We note that none of these provisions have been amended in any substantially relevant manner since Blauer initiated his grievance proceeding in September 2003.

20101048-CA                            5

including employment discrimination on the basis of . . . disability, are not admissible under these grievance procedures. The [Board] and [Board] hearing officers have no jurisdiction over the preceding claims." Utah Admin. Code R137-1-5(1).

¶13    In light of these provisions, the Board concluded that it lacked jurisdiction to consider Blauer's claim that he had been the victim of workplace discrimination.[7] Blauer does not argue that the Board's interpretation of the cited statutes and rule is incorrect. Rather, he argues that this court conclusively established the Board's jurisdiction in this particular instance when we stated, in *Blauer III*, "[W]e conclude that the district court determined that Blauer's claims had been raised in such a way that there were *no jurisdictional deficiencies* at the agency or district court level." 2008 UT App 84U, para. 4 (mem.) (emphasis added). Blauer relies on the admittedly broad statement "no jurisdictional deficiencies" as establishing, as the law of the case, that the Board had subject matter jurisdiction to consider his workplace discrimination claim.

¶14    Blauer is correct that "when an appellate court makes a pronouncement on a legal issue, [a lower tribunal] must not depart from the mandate." *Jensen v. IHC Hosps., Inc.*, 2003 UT 51, ¶ 67, 82 P.3d 1076 (internal quotation marks omitted). Here, however, Blauer takes the statement "no jurisdictional deficiencies" out of context. When read in context with the overall posture and analysis of *Blauer III*, it is clear that this court had no intention of vesting the Board with jurisdiction to consider an employment

---

[7]The Board also observed that Utah Administrative Code R477-15-2 and R477-15-3, under which Blauer was pursuing his workplace discrimination claim, do not appear to be intended to provide a remedy in favor of those affected by workplace discrimination. Rather, the intent of these rules appears to be to provide for discipline against perpetrators of workplace discrimination. The Board observed,

> Importantly, this rule is limited in scope and provides no separate right of remedy for employees outside the statutory framework of [the Antidiscrimination and Labor Act]. Instead, this rule merely outlines prohibited employment conduct regarding harassment or discrimination and creates a basis to discipline employees who fail to comport their conduct consistent with the parameters set forth in Utah Code Admin. R477-15.

discrimination claim that it was otherwise barred from hearing by statute and administrative rule.

¶15    Rather, the jurisdictional issue decided by *Blauer III* involved whether Blauer had originally preserved his personnel rule violation claims before the Board.  In an order dated August 16, 2004, the district court had previously determined that Blauer had preserved his claims, stating,

> The Court concludes that [Blauer], in his Request for Reconsideration before the [Board], preserved all of his remaining allegations concerning [DWS's] violations of the Personnel Management Act.  In other words, the Court declines to follow [DWS's] reasoning that these grounds for grieving were not raised administratively and are therefore deemed waived or that this Court has no jurisdiction to consider them.

When the Board subsequently refused to consider Blauer's claims for various jurisdictional reasons,[8] *Blauer III* expressly relied on this language from the district court's order as the basis for its conclusion that there were no jurisdictional deficiencies with Blauer's claims.  *See* 2008 UT App 84U, para. 4 ("Based on this language in the order, we conclude that . . . there were no jurisdictional deficiencies . . . .").  Further, *Blauer III* stated that the Board had erred "by considering jurisdictional issues *that had already been decided* by the district court," *see id.* (emphasis added); however, the district court had never addressed the Board's subject matter jurisdiction to hear workplace discrimination claims.

_____

[8]Blauer is correct that one of the jurisdictional grounds originally relied on by the Board, and thus implicitly rejected by *Blauer III*, was that the Board lacked subject matter jurisdiction to consider workplace discrimination claims under Utah Administrative Code R137-1-5.  However, the Board also determined that such a claim "simply cannot be raised for the first time at the Step 5 level," and this preservation ruling did conflict with the district court's order.  In any event, it is clear that the district court never decided the subject matter jurisdiction issue and that *Blauer III* limited its statement on jurisdiction to "issues that had already been decided by the district court." *See* 2008 UT App 84U, para. 4.

¶16    Thus, read in context, our decision in *Blauer III* did not vest the Board with subject matter jurisdiction that it did not already possess but merely precluded the Board from asserting lack of preservation or similar grounds as a jurisdictional basis for refusing to consider Blauer's claims.  Nothing in *Blauer III* can reasonably be read to mean that the Board was required to substantively adjudicate Blauer's workplace discrimination claim when its consideration of such claims is precluded by statute and administrative rule.[9]  Accordingly, we reject Blauer's law-of-the-case argument and affirm the Board's conclusion that it lacked subject matter jurisdiction to consider his workplace discrimination claim.

## II. DWS Adequately Defined Blauer's Job Parameters

¶17    Next, Blauer argues that the Board erred in determining that DWS adequately defined his job parameters pursuant to Utah Administrative Code R477-10-1.  The Board upheld the hearing officer's determinations that DWS had substantively complied with R477-10-1's requirements, that Blauer's job performance parameters were properly defined by DWS "via his meetings with his supervisor," and that any failure by DWS in this regard was remedied when Blauer's 2003 performance rating was upgraded to "successful."  The Board concluded that these decisions by the hearing officer were "reasonable, rational and support[ed] by substantial evidence."

¶18    On judicial review, Blauer argues that the Utah Administrative Code in effect at the time of his unsuccessful job rating and reassignment required that "[m]anagers or supervisors provide employees with regular verbal and written feedback based on the standards of performance and conduct outlined in [each employee's] performance plan," Utah Admin. Code R477-10-1(1)(b) (2003), and allowed for "corrective action" only when an employee's performance failed to meet "established standards."  *See id.* R477-10-2.  Blauer argues that, because there was no current performance plan in effect for his position after 2001, his unsuccessful performance rating in 2003 was not based on established standards.  Although Blauer acknowledges that his unsuccessful rating was later amended to a successful one, he contends that his subsequent reassignment was also a form of corrective action resulting from his job performance in the 2001–2003 time frame.

---

[9]Nor are we suggesting that this court possesses the power to confer such authority.

¶19    We agree with the Board that DWS's amendment of Blauer's 2003 performance rating, in response to a separate grievance by Blauer, substantively remedied any failure by DWS to strictly comply with R477-10-1.  And we cannot agree with Blauer that his reassignment constitutes "corrective action" when we have previously determined that the reassignment was not a demotion and was "[not a] change in job or position, but rather a reallocation by DWS of Blauer's then existing job responsibilities."  *See Blauer I*, 2005 UT App 488, ¶¶ 31–36, 128 P.3d 1204.  However, if we were to treat the reassignment as a corrective action flowing from the lack of a current performance plan, we also agree with the Board's assessment that DWS substantively complied with R477-10-1 by "meeting with [Blauer] on a near weekly basis to review his current work and discuss further job performance expectations with [him]."

¶20    Even if we were inclined to view DWS's actions as a violation of R477-10-1 and -2 resulting in some currently remediable harm to Blauer, this is clearly a situation "in which the agency's special expertise puts it in a better position than an appellate court to evaluate the circumstances of the case in light of the agency mission," and the Board is entitled to deference.  *See Sorge v. Office of the Attorney Gen.*, 2006 UT App 2, ¶ 17, 128 P.3d 566 (internal quotation marks omitted).  However, in this case we agree with the Board that DWS substantially complied with R477-10-1 and remedied any failure to strictly comply by amending Blauer's 2003 job rating to "successful."  Accordingly, we uphold the Board's denial of Blauer's job parameters claim.

III. The Notice of Reassignment Did Not Constitute a Grievable Written Reprimand

¶21    Finally, Blauer argues that the September 9, 2003 Notice reassigning him to conducting unemployment insurance hearings constituted a grievable "written reprimand," *see* Utah Code Ann. § 67-19a-202(1)(a) (2004), and that the Board erred in concluding that it did not.[10]  Blauer argues that there is no Utah statutory or case law definition for what constitutes a written reprimand and that the Board should have

---

[10]Blauer argued to the Board that several other DWS documents constituted written reprimands, but his argument before this court focuses on the Notice.

adopted the hearing officer's acknowledgment that "all the documents are written and, in a broad, dictionary sense, they are 'reprimands.'"[11]

¶22    Again, particularly in the absence of a statutory definition, the determination of when a document such as the Notice rises to the level of a grievable written reprimand under the prior Utah Code seems to fall within the Board's "special expertise." *See Sorge*, 2006 UT App 2, ¶ 17. The Board determined that the Notice did not constitute a written reprimand, agreeing with the Hearing Officer that the acceptance of Blauer's argument would "transform all departmental letters and performance evaluations that contained any 'critical comments'" into grievable matters. The Board also observed that nothing in the Notice "necessarily removed privileges from [Blauer] or imposed restrictions beyond those already cabined in [Blauer's] core job functions," and that this court had previously stated in *Blauer I* that the Notice "'did nothing more than extend one of Mr. Blauer's core job functions, in response to varying [DWS] needs.'" (Quoting *Blauer I*, 2005 UT App 488, ¶ 32.) Reviewing the Board's decision with the deference due to it, *see Sorge*, 2006 UT App 2, ¶ 17, we are not persuaded that the Board's determination that the Notice did not constitute a grievable written reprimand was in error.

¶23    To the contrary, one of the very cases cited by Blauer on appeal convinces us that the Board's determination was correct. In *Gordon v. Horsley*, 102 Cal. Rptr. 2d 910 (Cal. Ct. App. 2001), the California Court of Appeals concluded that a letter in a sheriff's deputy's personnel file that expressed "'grave concerns that you have demonstrated poor judgment and decision making ability both on and off duty'" and restricted the deputy from carrying a concealed firearm or exercising peace officer duties in his off-hours constituted a grievable punitive action as a "written reprimand" under applicable

---

[11]We note that the hearing officer continued, "However, to equate all such documents with a 'written reprimand' under [Utah Code section 67-19a-202(1)(a)] would transform all letters and performance evaluations containing a critical comment into a disciplinary document subject to due process," and ultimately concluded that the Notice and other challenged documents did "not appear to constitute written reprimands as that term is defined by Utah law."

California law. *See id.* at 917. The court stated that the letter "was unquestionably a criticism for a fault and thus constituted a written reprimand." *See id.*

¶24 By contrast, reading the Notice as a whole reveals that the performance shortcomings identified therein were not included for the purpose of punishing Blauer or even documenting Blauer's performance issues. Rather, their apparent purpose was to explain to Blauer the full range of reasons for his reassignment. And this court has described that reassignment as a mere "reallocation by DWS of Blauer's then existing job responsibilities" that did "nothing more than extend one of Blauer's core job functions, in response to varying [DWS] needs." *See Blauer I*, 2005 UT App 488, ¶ 32. Thus, we view the Notice as akin to "a routine performance evaluation containing negative comments," which "do[es] not, in and of [itself], amount to punitive action." *See Gordon*, 102 Cal. Rptr. 2d at 919; *see also Turturici v. City of Redwood City*, 236 Cal. Rptr. 53, 55 (Cal. Ct. App. 1987) ("[T]he nature of an employee evaluation is such that negative comments may be expected. Certainly, the Legislature did not contemplate an administrative appeal every time an employee receives an adverse evaluation.").

¶25 Thus, although the Notice undoubtedly contains some information that reflects negatively on Blauer, we agree with the Board that it did not constitute a grievable written reprimand. The Notice was not disciplinary or punitive in nature, nor did it impose any sanctions against Blauer. Rather, the intent of the Notice appears to have been to explain to Blauer the reasons for his reassignment, in the hope that the constructive criticism might help him succeed in his new duties. We cannot envision a legislative intent that every such document trigger a right to an administrative appeal, and we uphold the Board's decision that the Notice was not grievable as a written reprimand under former Utah Code section 67-19a-202(1)(a).

CONCLUSION

¶26 We conclude that *Blauer III* did not preclude the Board's determination that it lacked jurisdiction to consider Blauer's workplace discrimination claim. We also agree with the Board's assessment that DWS did not improperly fail to define Blauer's job parameters and that the Notice reassigning Blauer was not a grievable written

reprimand. Accordingly, we uphold the Board's decision denying Blauer's claims against DWS.

_____
William A. Thorne Jr., Judge

-----

¶27    WE CONCUR:


_____
J. Frederic Voros Jr.,
Associate Presiding Judge


_____
Stephen L. Roth, Judge