2007 UT App 336

**Daniel HARMON, Petitioner,**

v.

**OGDEN CITY CIVIL SERVICE COM-MISSION, Ogden City Corporation, Og-den City Fire Department, and Fire Chief Mike Mathieu, Respondents.**

No. 20060434–CA.

Court of Appeals of Utah.

Oct. 18, 2007.

City Fire Department, and Fire Chief Mike Mathieu.

Before Judges DAVIS, ORME, and THORNE.

## OPINION

DAVIS, Judge:

¶ 1 Plaintiff Daniel Harmon appeals the decision of the Ogden Civil Service Commission (the Commission), affirming the decision of Chief Mathieu (the Chief) of the Ogden City Fire Department (the Fire Department) to terminate Harmon. Harmon asserts that termination was a disproportionate sanction here and that his civil rights were violated through the disciplinary procedures taken. We affirm.

## BACKGROUND

¶ 2 On September 8, 2000, the Fire Department received a complaint alleging that Harmon, a captain, had sexually harassed a subordinate female employee two years prior. The Fire Department initiated an investigation into the matter, which investigation revealed several incidents over Harmon's twenty-one year career wherein he had acted inappropriately, including: (1) failing to attend multiple mandatory training meetings; (2) allowing female entertainers to pose topless with Fire Department employees while he was acting as an official of the Fire Fighter's Union at a fundraiser for the Muscular Dystrophy Association (the MDA Incident); (3) filling an empty bottle of weedkiller, which he knew was intended for his former supervisor, with his urine (the Weedkiller Incident); (4) publicly urinating into a drafting pit during a training session (the Drafting Pit Incident); (5) urinating into a shower stall that was occupied by one of his colleagues (the Shower Stall Incident); (6) allowing a female firefighter to make lewd references to a zucchini, and countering her remarks with his own (the Zucchini Incident); and (7) allowing and participating in activities where clothed male employees would imitate sexual intercourse with each

D. Bruce Oliver, Salt Lake City, for Petitioner.

Douglas J. Holmes, Ogden, for Respondent Ogden City Civil Service Commission.

Stanley J. Preston, Camille N. Johnson, and Judith D. Wolferts, Salt Lake City, for Respondents Ogden City Corporation, Ogden

other (the Horseplay Incidents).[1] Two hearings were held within the Fire Department regarding Harmon's actions, which hearings resulted in his termination. Harmon appealed the Fire Department's decision to the Commission pursuant to Utah Code section 10–3–1012(2). *See* Utah Code Ann. § 10–3–1012(2) (2003).[2]

¶ 3 In examining the Fire Department's termination of Harmon, the Commission considered only Harmon's failure to appear at training meetings, the MDA Incident, the Weedkiller Incident, and the Drafting Pit Incident. The Commission did not consider the remaining incidents because they were too remote or were understood by the other involved employees as a joke. Based on the incidents considered, the Commission found that termination was an inappropriately harsh punishment and reversed Harmon's termination.

¶ 4 Ogden City (the City) then appealed the Commission's decision to this court. *See Ogden City Corp. v. Harmon*, 2005 UT App 274, 116 P.3d 973. The City argued that all of the incidents involving Harmon's misbehavior were relevant and should have been considered by the Commission. *See id.* ¶ 11. Additionally, the City asserted that the Commission erred in failing to consider evidence regarding Harmon's untruthfulness during one of his termination hearings when he was questioned about his involvement in the Weedkiller Incident.[3] *See id.* ¶ 13. We agreed with the City on both counts, reversed the Commission's order, and remanded to the Commission for further consideration. *See id.* ¶ 15. We instructed the Commission to explore on remand Harmon's alleged misrepresentations and dishonest remarks, and to consider all of Harmon's inappropriate behavior in arriving at its conclusion. *See id.*

¶ 5 On April 13, 2006, the Commission entered its Findings of Fact, Conclusions of Law and Order (Remand Order). The Remand Order provided that Harmon's termination was appropriate in light of the totality of the incidents and his general work performance. The Remand Order also noted that there was sufficient evidence to show that Harmon had been deceitful in conjunction with the Weedkiller Incident. Harmon now appeals the Remand Order.

## ISSUES AND STANDARDS OF REVIEW

¶ 6 Harmon argues that the Commission erred in finding that termination was a proportionate and proper sanction for his actions. In order for this court to overturn the Commission's decision as to the propriety of Harmon's termination, Harmon must show either (1) that the facts do not support the action taken by the Fire Department or (2) that the charges do not warrant the sanction imposed. *See Kelly v. Salt Lake City Civil Serv. Comm'n*, 2000 UT App 235, ¶ 16, 8 P.3d 1048. We instructed the Commission to consider *all* of the incidents on remand. *See Harmon*, 2005 UT App 274, ¶ 15, 116 P.3d 973. Thus, we do not now consider whether the charges against Harmon are supported but instead address only whether those charges warrant termination. In doing so, we review the Commission's decision to determine "if the [C]ommission has abused its discretion or exceeded its authority." Utah Code Ann. § 10–3–1012.5 (2003). The Commission is required to give deference to the Chief, as he is best able to "balance the competing concerns in pursuing a particular disciplinary action." *Harmon*, 2005 UT App 274, ¶ 17, 116 P.3d 973. Therefore, the Commission's affirmance of the Chief's termination of Harmon will be upheld unless it " 'exceeds the bounds of reasonableness and rationality.' " *McKesson Corp. v. Labor*

---

1. For a more complete explanation of these incidents, see *Ogden City Corp. v. Harmon*, 2005 UT App 274, ¶¶ 3–6, 116 P.3d 973.

2. We use the 2003 version of the statute, as it is largely identical to the version in effect in 2000. *Compare* Utah Code Ann. § 10–3–1012 (2003), *with id.* § 10–3–1012 (1999) (amended 2001).

3. At the December 11, 2000 hearing, Harmon was asked about his involvement in the Weedkiller Incident. Harmon replied only by referencing a letter in which he denied participation. However, several of Harmon's coworkers had witnessed the event, and thus, the Chief concluded that Harmon was misleading the hearing panel. In addition, Harmon later testified before the Commission that he had participated in the incident.

*Comm'n,* 2002 UT App 10, ¶ 11, 41 P.3d 468 (quoting *Ae Clevite, Inc. v. Labor Comm'n,* 2000 UT App 35, ¶ 7, 996 P.2d 1072); *see also Tolman v. Salt Lake County Attorney,* 818 P.2d 23, 26–27 (Utah Ct.App.1991).

■ ¶ 7 Harmon also argues that the Commission violated his constitutional due process rights and that he should be compensated for these violations. We afford the Commission no deference here, as constitutional challenges constitute questions of general law. *See Questar Pipeline Co. v. Utah State Tax Comm'n,* 817 P.2d 316, 317–18 (Utah 1991); *Savage Indus., Inc. v. Utah State Tax Comm'n,* 811 P.2d 664, 670 (Utah 1991). Thus, we review the Commission's procedures and resulting actions for correctness. *See Questar,* 817 P.2d at 317.

## ANALYSIS

### I. Appropriateness of the Sanction

■ ¶ 8 "In determining whether the sanction of dismissal is warranted in this case, the Commission must affirm the sanction if it is (1) appropriate to the offense and (2) consistent with previous sanctions imposed by the department." *Ogden City Corp. v. Harmon,* 2005 UT App 274, ¶ 16, 116 P.3d 973 (citing *Kelly,* 2000 UT App 235, ¶ 16, 8 P.3d 1048). Here, the focus is on the first part of the test because "[t]he Commission has already determined that Harmon offered no evidence of inconsistency, and therefore, the question of severity is of primary importance in this case." *Id.*

■ ¶ 9 Regarding the severity question, we previously noted that exemplary performance by an employee may serve as evidence against termination, while job violations and continued misbehavior could weigh in favor of dismissal. *See id.* ¶ 18 (citing *Kelly,* 2000 UT App 235, ¶ 25, 8 P.3d 1048; *Lucas v. Murray City Civil Serv. Comm'n,* 949 P.2d 746, 762 (Utah Ct.App.1997)). Speaking directly to this standard, the Commission noted that Harmon's failure to attend scheduled meetings and his sub-par evaluations were not indicative of an " 'exemplary service record.' " The Commission also analyzed in depth the specific incidents of misconduct at issue and concluded that "Harmon's conduct

repeatedly violated [the Fire Department's] and the City's policies to such a degree that termination was fully justified."

■ ¶ 10 Additionally, in our prior decision we listed four factors for the Commission to consider on remand in weighing the propriety of Harmon's termination against his offenses:

> (a) whether the violation is directly related to the employee's official duties and significantly impedes his or her ability to carry out those duties; (b) whether the offense was a type that adversely affects the public confidence in the department; (c) whether the offense undermines the morale and effectiveness of the department; or (d) whether the offense was committed willfully or knowingly, rather than negligently or inadvertently.

*Id.* We believe that the Commission correctly applied these standards. First, the Commission determined that "the six incidents, as well as Harmon's evaluations and disciplines, [were] directly related to his duties as a captain and took place in the workplace, thus impeding his ability to legitimately carry out his duties and to serve as an example." Second, the Commission concluded that "Harmon's conduct is also of the type that would adversely affect the public's confidence and respect for the City as well as its confidence in [the Fire Department's] abilities to carry out its duties." The Commission specifically noted that "the training facility where the Drafting Pit Incident occurred sits back onto 12th Street in Ogden and can be seen from public view through a chain link fence." Third, the Commission devoted a large part of its discussion of the suitability of Harmon's termination to an explanation of how the inappropriateness of Harmon's actions could affect employee morale. Specifically, the Commission described six incidents as "revolv[ing] around conduct having sexual overtones," and found both that "[Harmon] had attended annual training sessions dealing with establishing and maintaining a workplace sensitive to and aware of inappropriate activities of a sexual nature" and that "it was Harmon's duty as a [Fire Department] officer to set a good example and be a leader to

his subordinates in improving the workplace so that there was decreased risk of offending individuals with inappropriate sexual conduct." The Commission further noted that "when the Shower [I]ncident is combined with the Drafting Pit and Weedkiller Incidents, a pattern of behavior by Harmon emerges where public urination is the centerpiece. This conduct is totally inappropriate and bizarre for anyone in the workplace, let alone a captain who should be an example to subordinates." Fourth, addressing the final factor, the Commission concluded that "[i]t is also significant that Harmon's conduct obviously was knowing and willing, and not simply negligent or inadvertent." Accordingly, we affirm the Commission's reasonable and rational determination that termination was an appropriate sanction here.

## II. Alleged Constitutional Violations [4]

¶ 11 Harmon argues that his constitutional rights were violated during the termination hearing process and seeks redress pursuant to 42 U.S.C. § 1983.[5] He first asserts that the Commission failed to address allegations regarding his dishonesty in connection with the Weedkiller Incident (as we had previously instructed), and that this oversight has caused harm to his reputation and to his ability to gain future employment. Harmon contends that he held a property interest in his past job as a firefighter and in positions that he may apply for in the future, and that these interests evoke certain due process rights of which he was deprived. In conjunction with these claims, Harmon also asserts that his due process rights were violated because the Commission failed to consider the facts of the honesty issue in light of *Garrity v. New Jersey,* 385 U.S. 493, 87 S.Ct.

616, 17 L.Ed.2d 562 (1967). We find Harmon's arguments to be without merit.

¶ 12 The Commission adequately acknowledged and addressed issues involving Harmon's dishonesty. This court previously stated:

> We reach no conclusion in regard to whether [Harmon's untruthfulness in relation to the Weedkiller Incident] does or does not support the charges against Harmon, but we agree with the City that the Commission is under an obligation to address each of the grounds for termination stated by the department head.... An allegation of dishonesty, if proven, would violate Fire Department regulations and could possibly add further support to the charges against Harmon. As such, it must be considered.

*Harmon,* 2005 UT App 274, ¶ 14, 116 P.3d 973 (footnote omitted). Speaking to this issue, Commissioner John R. Lemke stated in his concurring opinion:

> I ..: believe that Harmon's actions in the Second Predetermination Hearing are misconduct and can be considered in determining the appropriate punishment. His actions show that he lacked the judgment to appraise the situation. He knew that he was about to be punished and that the punishment was likely to be at least demotion, but yet he continued to play games with the Chief and he could not bring himself to acknowledge what he had done. This is much less than is expected from a Captain with twenty years of service and it raises serious concerns about Harmon's trustworthiness. It was a legitimate factor in the Chief's termination decision and, I believe, sufficiently serious that when added to the other misconduct can support

---

4. The City argues that this court does not have original jurisdiction over Harmon's U.S.C. § 1983 claim, a position which Harmon disputes. Because we find that Harmon's constitutional claim is without merit and is unsupported by the evidence, we do not reach the jurisdiction issue.

5. This section provides:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.
 42 U.S.C. § 1983 (2000).

termination. Therefore, I join the majority in finding that Harmon's misconduct justified termination.

The dishonesty issue was addressed by Commissioner Lemke in depth. He also commented that

Harmon, rather than truthfully answering the question asked and admitting his misconduct, decided that he would continue with his "game" and do nothing to clarify the Chief's misunderstanding. His written response may not have been dishonest, but his oral response to the Chief's question was a clear evasion and it was insubordinate and disrespectful conduct toward a superior and also inconsistent with the trust a Chief must have in his Captains.

In his review of the honesty issue, Commissioner Lemke asserted that the issue was "considered by the Chief in making his termination decision."

¶ 13 In response to Commissioner Lemke's analysis, the majority of the Commission recognized Harmon's dishonesty and addressed the matter in the Remand Order.

Commissioners. Greenwood's and Taylor's opinion here is based on their opinion that the seven incidents alone are sufficient to justify Harmon's termination. However, they also agree that the evidence shows that Harmon displayed an intent to deceive Chief Mathieu about the Weedkiller Incident, and that this dishonesty issue would justify dismissal with or without combining it with the other seven incidents.

These statements illustrate that the dishonesty issue was not "avoided" as Harmon asserts but, instead, that the Commission fully addressed all of the grounds for Harmon's termination in keeping with his procedural due process rights.

 ¶ 14 Next, we agree with Harmon that he holds a property interest in continued and future public employment, *see* Utah Code Ann. § 10–3–1012; *Board of Regents of*

State Colls. v. Roth, 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (stating that a due process opportunity to be heard is required when "a person's good name, reputation, honor, or integrity is at stake" (internal quotation marks omitted)); *Lucas v. Murray City Civil Serv. Comm'n*, 949 P.2d 746, 753 (Utah Ct.App.1997), and that these rights are accompanied by certain procedural constitutional guarantees. We have previously held that for nonexempt civil service employees, these guarantees include "oral or written notice of the charges, an explanation of the employer's evidence, and an opportunity for the employee to present his or her side of the story in 'something less than a full evidentiary hearing.'" *Lucas*, 949 P.2d at 753 (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)); *see also Durfey v. Board of Educ.*, 604 P.2d 480, 484 (Utah 1979). Here, Harmon was notified of the charges against him, had predetermination hearings during which he could refute those charges, and was given a full hearing with the opportunity to call witnesses on his behalf and to cross-examine those witnesses called by the City. On remand, Harmon was also allowed to submit an additional brief[6] and was given the opportunity to present further oral argument.[7] Therefore, Harmon was not deprived of any property interest without due process.

¶ 15 Finally, Harmon argues that his failure to respond to specific inquiries by the hearing panel was an invocation of *Garrity v. New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), and that the Commission failed to recognize or address his right to invoke his privilege to remain silent. Instead, he asserts, the Commission wrongly considered his actions to be indicative of his dishonesty. However, Harmon misinterprets *Garrity*, which has no bearing on this matter.

¶ 16 *Garrity* involved New Jersey police officers accused of fixing traffic tickets who

---

6. The Commission gave the parties an opportunity to submit simultaneous briefs by January 3, 2006. Although the City timely filed its brief, Harmon filed his brief on January 24, 2006. Harmon's brief improperly responded to the arguments set forth in the City's brief, but was nevertheless considered by the Commission.

7. Harmon did not take advantage of the opportunity to present oral argument because his counsel was unavailable. Thus, neither Harmon nor the City presented oral argument at the hearing.

were apprised of their right to remain silent when questioned regarding the tickets. *See id.* at 494, 87 S.Ct. 616. The officers were told that any information they did provide could be used against them in a criminal prosecution. *See id.* But the warning also provided that if the officers refused to answer, they would be subject to removal from office. *See id.* The United States Supreme Court was asked to decide whether a state can threaten termination in order to obtain incriminating information from an employee. *See id.* at 499, 87 S.Ct. 616. The Court answered, "[w]e now hold the protection of the individual under the Fourteenth Amendment against coerced statements *prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from office,* and that it extends to all, whether they are policemen or other members of our body politic." *Id.* at 500, 87 S.Ct. 616 (emphasis added).

¶ 17 Thus, *Garrity* stands for the proposition that statements made by a public employee under threat of removal cannot be used subsequently in a criminal proceeding. *See id.; Kelly v. Salt Lake City Civil Serv. Comm'n,* 2000 UT App 235, ¶ 32 n. 9, 8 P.3d 1048. But *Garrity* does not protect public employees from having to answer questions concerning their conduct at their own termination hearings in a noncriminal investigation. Therefore, the Commission was not required to address *Garrity* in the context of Harmon's actions, and no procedural due process violation occurred.

## CONCLUSION

¶ 18 The Commission's decision to uphold the Chief's termination decision was neither unreasonable nor irrational in light of Harmon's actions and dishonest conduct. The Commission also correctly proceeded with the termination process and adequately protected Harmon's constitutional due process rights throughout the investigation, as it examined all pertinent issues. We therefore affirm the Commission's disposition of the case given its findings.

¶ 19 WE CONCUR: GREGORY K. ORME and WILLIAM A. THORNE JR., Judges.