230 P.3d 1032 (2010)
2010 UT App 51
Jack GUENON, Petitioner,
v.
MIDVALE CITY, a Utah municipal corporation; and Midvale City Employee Appeals Board, Respondents.
No. 20081043-CA.
Court of Appeals of Utah.
March 4, 2010.
*1033 Ryan B. Hancey, Salt Lake City, for Petitioner.
H. Craig Hall and Jennifer A. Brown, Salt Lake City, for Respondents.
Before Judges McHUGH, ORME, and BILLINGS.[1]

MEMORANDUM DECISION
McHUGH, Associate Presiding Judge:
¶ 1 Midvale City Police Officer Jack Guenon appeals from the decision of the Midvale *1034 City Employee Appeals Board (the Board) that upheld Midvale City's (the City) decision to terminate Officer Guenon's employment with the Midvale City Police Department (the Department). We affirm.
¶ 2 In affirming the City's decision to terminate Officer Guenon's employment, the Board concluded that termination was proportionate to Officer Guenon's misconduct, based on its finding that Officer Guenon violated four of the Department's policies: (1) mishandling evidence, (2) theft or misappropriation of private property, (3) intentionally viewing pornography on his city-issued laptop, and (4) two acts of insubordination.[2]
¶ 3 To prevail on his appeal of that decision, Officer Guenon must show "either (1) that the facts do not support the action taken by [the City] or (2) that the charges do not warrant the sanction imposed." Harmon v. Ogden City Civil Serv. Comm'n, 2007 UT App 336, ¶ 6, 171 P.3d 474. Officer Guenon argues that the Board lacked substantial evidence to support its findings regarding some of the grounds for termination, that the acts of insubordination were protected by the Utah Protection of Public Employees Act (the Whistleblower Act), see Utah Code Ann. § 67-21-3(1)(a) (2008), and that the sanction of termination was disproportionate to his actions and "excessive in light of [his] exemplary record."
¶ 4 Relying solely "on the record of the ... [B]oard," we review the Board's decision to "determin[e] if the ... [B]oard abused its discretion or exceeded its authority." Utah Code Ann. § 10-3-1106(6)(c) (Supp.2009); see also Harmon, 2007 UT App 336, ¶ 6, 171 P.3d 474; Kelly v. Salt Lake City Civil Serv. Comm'n, 2000 UT App 235, ¶ 15, 8 P.3d 1048. Because the City's Chief of Police (the Chief) "is best able to balance the competing concerns in pursuing a particular disciplinary action," the Board was "required to give deference to the Chief." Harmon, 2007 UT App 336, ¶ 6, 171 P.3d 474 (internal quotation marks omitted). Accordingly, we will uphold the Board's "affirmance of the Chief's [decision to] terminat[e Officer Guenon] ... unless it exceeds the bounds of reasonableness and rationality." Id. (internal quotation marks omitted).
¶ 5 Before turning to the merits of Officer Guenon's arguments on appeal, we first address the City's contention that Officer Guenon failed to marshal the evidence supporting the Board's decision. To challenge the Board's factual findings, Officer Guenon is required to "marshal all of the evidence supporting the findings and show that despite the supporting facts, and in light of the conflicting or contradictory evidence, the findings are not supported by substantial evidence." Carter v. Labor Comm'n Appeals Bd., 2006 UT App 477, ¶ 12, 153 P.3d 763 (internal quotation marks omitted). Officer Guenon argues that the Board lacked substantial evidence to support its findings regarding the insubordination, theft or misappropriation, and pornography charges.[3]
¶ 6 After reviewing the record, we agree that Officer Guenon did not adequately marshal the evidence. Indeed, he omitted from his opening brief the following critical facts that support the Board's findings: That he admitted downloading potentially embarrassing photographs of two supervisors onto a CD in order to give "shit" to the individuals in the photographs, wrote "job security" on *1035 the CD, kept the CD with his personal belongings, then waited more than six months before reporting his alleged concerns to the Attorney General's office and only did so after his relationship with the supervisors in the photographs had deteriorated; that the Department's computer use policy expressly states that "[t]he contents of [C]ity (police) owned computers are the sole property of the [C]ity (police)"; that he showed the photographs to another officer who acknowledged seeing them in his testimony before the Board; and that the three pornographic images on Officer Guenon's computer were all "accessed" for the last time on the same day. Because Officer Guenon failed to marshal the evidence, we reject his sufficiency of the evidence challenge and accept the Board's findings of fact as true for purposes of our analysis.
¶ 7 Turning to the merits of Officer Guenon's legal arguments, we first address his claim that the Board improperly concluded that he was insubordinate by twice refusing to follow the Department's formal chain of command.[4] The insubordination charge stems from two incidents where Officer Guenon reported his apparent concerns about possible violations of law to state and federal officials rather than bringing the matters to the attention of his supervisors in the Department.
¶ 8 The first incident relates to vacation photographs belonging to another officer, which Officer Guenon downloaded onto a CD. Two Department supervisors were seen in the photographs, some of which showed one female supervisor standing in the presence of young children while wearing a sheer negligee that exposed portions of her breasts. More than six months after copying the photographs, and without discussing any concerns with his supervisors, Officer Guenon contacted the Utah Attorney General's office, purportedly because he suspected the photographs violated Utah's lewdness statute.[5]
¶ 9 The second incident occurred when Officer Guenon filed a report with the Federal Bureau of Alcohol, Tobacco, and Firearms (the ATF) regarding the improper way the Department had stored some explosives it had acquired in October 2007. Shortly thereafter, Officer Guenon saw the explosives in the Department's Armory and realized that they were stored in violation of the ATF's policies, thereby creating a potential safety hazard. Officer Guenon informed his immediate supervisor that "there w[ere] explosives in the Armory" but did not elaborate or explain that this was a safety risk, choosing instead to report the violation directly to the ATF.
¶ 10 Officer Guenon argues that, as a matter of law, the Board may not punish him for either of these actions because in both instances his decision to report the suspected violations was protected under section 3(1)(a) of the Whistleblower Act, see Utah Code Ann. § 67-21-3(1)(a) (2008). The Whistleblower Act prohibits employers from "tak[ing] adverse action against an employee because the employee ... communicates in good faith the existence of ... a violation or suspected violation of a law, rule, or regulation adopted under the law of this state, a political subdivision of this state, or any recognized entity of the United States." Id. In response, the City argues that Officer Guenon "is not protected by the [Whistleblower] Act because his reports were not made in good faith."[6]
*1036 ¶ 11 The Whistleblower Act does not expressly define the term "good faith," stating instead that a presumption of good faith arises if an employee "gives written notice or otherwise formally communicates the ... violation... to the state auditor," and that such a presumption may be rebutted by evidence "showing that the employee knew or reasonably ought to have known that the report is malicious, false, or frivolous." Id. § 67-21-3(1)(b). Because Officer Guenon did not report either suspected violation to the state auditor, he is not entitled to a presumption of good faith. It follows, however, that if such a presumption could be negated by evidence that an employee's report is "malicious, false, or frivolous," see id. similar evidence will also establish that the employee did not act in good faith in the first instance.
¶ 12 Turning first to Officer Guenon's decision to report the improper storage of explosives to the ATF, we see nothing in either the Board's findings or the record to support a conclusion that Officer Guenon did not act in good faith. To support its claim that the Whistleblower Act is inapplicable, the City relies on the Board's finding that Officer Guenon chose to report the "violation directly to the [ATF], rather than through police department channels, ... because of internal conflict with various individuals" within the Department.[7] We are not convinced. By its express terms, the Whistleblower Act protects employees who, acting in good faith, feel compelled to circumvent their own organization to report violations directly to state or federal officials. See id. § 67-21-3(1)(a). If we interpreted the Whistleblower Act as narrowly as the City suggests, the protection provided would be illusory. So long as Officer Guenon's report to the ATF was made in good faith, he could not be subjected to "adverse action." Id. Because there is nothing in the record or the Board's findings that supports a conclusion that Officer Guenon made the ATF report in bad faith, that report could not be a basis for the termination decision.
¶ 13 With respect to the report to the Attorney General's office concerning the vacation pictures, Officer Guenon did not act in good faith and is not protected by the Whistleblower Act. The Board found that when Officer Guenon first reviewed the pictures, he did not find anything objectionable but instead copied the photographs to his own CD "merely to give `shit'" to the supervising officers in the photographs. Indeed, Officer Guenon wrote "job security" on the CD, then waited for at least six months to deliver the photographs to the Attorney General and did so only after his relationships with his Department supervisors, including those depicted in the photographs had deteriorated. The record also indicates that, before turning the photographs over to the Attorney General, Officer Guenon showed them to at least one other officer in the Department. That officer, who shared an office with Officer Guenon and testified at Officer Guenon's request, stated that he had "seen the pictures" and "looked over them" on Officer Guenon's computer, and that the pictures left him "amazed." Given these facts, the record supports the Board's rejection of Officer Guenon's argument that he could not be disciplined for his report to the Attorney General due to the Whistleblower Act.
¶ 14 Finally, we address Officer Guenon's contention that the sanction of termination is disproportionate to the charges. For a sanction to be warranted, it must be both "proportional" to the charges and "consistent with previous sanctions imposed by the [D]epartment pursuant to its own policies." Kelly v. Salt Lake City Civil Serv. Comm'n, 2000 UT App 235, ¶ 21, 8 P.3d 1048. We will not set aside the Board's approval of the Chief's decision unless "the punishment imposed is in excess of `the range of sanctions permitted by statute or regulation, or if, in light of all the circumstances, the punishment is disproportionate to the offense.'" Id. ¶ 22 (quoting Lucas v. Murray City Civil Serv. Comm'n, 949 P.2d 746, 761 (Utah Ct.App. 1997)).
*1037 ¶ 15 Officer Guenon argues that termination is not proportional to the charges because his "exemplary record as a police officer tips the balance against termination." We agree with the Board that termination is an appropriate sanction here. At oral argument, Officer Guenon's attorney conceded that, due to the paramilitary nature of the Department, adherence to the chain of command is critical for the Department to function safely and properly. Moreover, the City's Policies and Procedures Manual defines insubordination as a "[c]ritical offense[ ]," which is a "violation[ ] of [the] City's Standards of Conduct that [is] extremely serious and may justify ... termination without regard to the employee's length of service or prior record of conduct." (Emphasis added.) Thus, on the basis of Officer Guenon's insubordination alone, termination was expressly within "the range of sanctions permitted by ... [the City's] regulation[s]." Kelly, 2000 UT App 235, ¶ 22, 8 P.3d 1048 (citing Lucas, 949 P.2d at 761).
¶ 16 While Officer Guenon's service record, which includes his being named the City's "Officer of the Year" in 2004 and the receipt of commendations for his service, "may serve as evidence against termination," Harmon v. Ogden City Civil Serv. Comm'n, 2007 UT App 336, ¶ 9, 171 P.3d 474, his service record is only one of several factors that appellate courts generally consider in determining whether termination is proportionate, see id. ¶ 10. Weighing in favor of a conclusion that termination was proportionate are the other factors identified in Harmon, including the fact that the violations were committed willfully and knowingly, the close relationship between the misconduct and Officer Guenon's official duties, and the potential impact of Officer Guenon's misconduct on the Department's morale and the public's perception of the Department. See id. Accordingly, we uphold the Board's determination that the sanction of termination was not disproportionate to Officer Guenon's violations of Department policies.[8]
¶ 17 In summary, because Officer Guenon failed to marshal the evidence in support of the Board's findings concerning the insubordination, pornography, and theft or misappropriation charges, we do not address his argument that the Board's findings are not supported by substantial evidence. Furthermore, although the Whistleblower Act protects Officer Guenon's decision to report the Department's improper storage of explosives to the ATF, the report to the Attorney General was not made in good faith and thus was not protected by the Whistleblower Act. Consequently, we cannot conclude that the Board abused its discretion or exceeded its authority in determining that Officer Guenon was insubordinate. Given the serious nature of Officer Guenon's violations of Department policies, termination was an appropriate sanction.[9]
¶ 18 WE CONCUR: GREGORY K. ORME, Judge, and JUDITH M. BILLINGS, Senior Judge.
NOTES
[1] The Honorable Judith M. Billings, Senior Judge, sat by special assignment pursuant to Utah Code section 78A-3-103(2) (2008) and rule 11-201(6) of the Utah Rules of Judicial Administration.
[2] The Board's findings were not included in the record on appeal but were attached as an addendum to Officer Guenon's opening brief. At oral argument, both parties agreed that the attached copy of the Board's findings is true and correct and that it should be supplemented to the record.
[3] Officer Guenon also maintains that there is no evidence to support the Board's finding that he violated the Department's evidence policy. That contention is based on the undisputed testimony that it was a common practice for police officers to leave seized identification cards and other evidence in their patrol cars rather than checking them into evidence as required by Department policy. As the City correctly notes, however, the fact that other officers may also have violated the policy is irrelevant to our analysis of whether substantial evidence in the record supports the Board's finding that Officer Guenon violated the policy. See Ogden City Corp. v. Harmon, 2005 UT App 274, ¶ 12, 116 P.3d 973 (holding "that a violation of department regulations is [not] justifiable merely because it is common" among the department's members and that the existence of such a common practice is "relevant only in that [it] may affect the degree of discipline imposed").
[4] The Department's policy requires an officer to "know who his or her supervisors are in the chain of command ... [,] obey all lawful orders," and "secure supervisory assistance when necessary to determine appropriate action, or when a situation requires resolution at a more appropriate level in the chain of command."
[5] Under Utah's lewdness statute, "[a] person is guilty of lewdness ... if the person ... [,] in the presence of a child who is under 14 years of age:... exposes ... the female breast below the top of the areola." Utah Code Ann. § 76-9-702.5 (Supp.2009).
[6] The City also argues that Officer Guenon "was disciplined for his failure to report the [ ] suspected violation of rules and law to his supervisors and through the appropriate chain of command," not for reporting the suspected violations to the agencies. We disagree. The original order of termination expressly states that the insubordination charge was based on Officer Guenon's report of the alleged violations to the Attorney General and the ATF.
[7] We note that these personality conflicts created significant animosity between Officer Guenon and various Department officials, which likely resulted in heightened scrutiny of Officer Guenon.
[8] Officer Guenon also argues that, by terminating his employment, the Chief subjected him to disparate treatment as compared with other members of the Department. We do not consider this contention because Officer Guenon did not make a "prima facie showing ... that the Chief's actions in [Officer Guenon's] case were contrary to his prior practice." Kelly v. Salt Lake City Civil Serv. Comm'n, 2000 UT App 235, ¶ 27, 8 P.3d 1048.
[9] Because we conclude that the termination decision was proportionate to Officer Guenon's violations in connection with the vacation photographs, we do not address his legal argument that the Board did not find that he intended to view pornography.