2013 UT App 183

# THE UTAH COURT OF APPEALS

RION PHILLIPS,
Petitioner,
*v.*
SOUTH JORDAN CITY AND SOUTH JORDAN CITY
APPEAL BOARD,
Respondents.

Opinion
No. 20110895-CA
Filed July 26, 2013

Original Proceeding in this Court

Ryan B. Hancey, Attorney for Petitioner
Camille N. Johnson, Attorney for Respondents

JUDGE WILLIAM A. THORNE JR. authored this Opinion, in which
JUDGES CAROLYN B. MCHUGH and STEPHEN L. ROTH concurred.

THORNE, Judge:

¶1      Petitioner Rion Phillips seeks judicial review of the South
Jordan City Appeal Board's (the Board) decision affirming South
Jordan City Police Chief Lindsay Shepherd's termination of
Phillips's employment with the South Jordan City Police
Department. We decline to disturb the Board's decision.

## BACKGROUND

¶2      On June 2, 2011, at approximately 1:25 a.m., Phillips was on
duty as a patrol officer when a radio transmission was received
from a Draper City police detective requesting that dispatch send
officers to assist with a possible fugitive. Phillips and Officer Mike

Raab, who were at the same location, informed dispatch that they were each responding to the request to assist.

¶3    Raab left first, and Phillips followed approximately fifteen to thirty seconds later. Both officers initially ran their emergency lights and sirens while traveling east on 10400 South from 3200 West to 300 West on the South Jordan Parkway. At that time, traffic was light, the roads were dry, and visibility was good. During his travels, Phillips reached a top speed of 121 mph, including driving through six intersections at speeds over 100 mph. Nearing the South Jordan Gateway, Phillips turned off his emergency lights and sirens. Thereafter, without lights or sirens, Phillips passed two vehicles. While traveling at 108 mph, Phillips passed the first vehicle, which had pulled over to the left side of the road. He then passed a moving vehicle on the right while driving 69 mph before turning onto 300 West. Phillips momentarily entered into the wrong lane of traffic as he negotiated the turn onto 300 West. Phillips arrived at the location shortly after Raab.

¶4    On June 13, 2011, South Jordan City (the City) commenced an internal complaint against Phillips regarding his June 2 emergency response. Lieutenant Dan Starks conducted the internal affairs investigation. The next day, Lieutenant Starks met with Phillips. He informed Phillips of the investigation and placed him on paid administrative leave pending its outcome. On June 17, after completing his investigation, Lieutenant Starks provided his disciplinary action recommendation to Chief Shepherd and recommended that Phillips be terminated from his employment with the South Jordan City Police Department. That same day, Chief Shepherd advised Phillips of a predisciplinary hearing, which was to be held on June 24, to afford Phillips an opportunity to respond to the allegations that he had violated General Orders 26.1 and 41.2.[1]

---

1. A general order is a written directive to guide members of the South Jordan City Police Department in a variety of different situations such as emergency call responses, vehicle pursuits, and field interviews.

¶5      On June 29, Chief Shepherd issued his termination decision finding that Phillips had violated South Jordan City Police Department General Orders 26.1 and 41.2.1 (General Order 41.2.1)[2] by driving at speeds that were excessive and shutting down emergency warning equipment before passing a vehicle on the right. Chief Shepherd considered Phillips's disciplinary action record and concluded that Phillips's repeated problems involving poor judgment and policy violations, which had resulted in disciplinary action during most of his employment with the South Jordan City Police Department, compromised Phillips's ability to function as a police officer. Chief Shepherd concluded that Phillips's June 2 emergency response was a continuation of Phillips's pattern of past failures to exercise good judgment. Chief Shepherd then terminated Phillips from his employment with the South Jordan City Police Department, effective June 30, 2011.

¶6      Phillips appealed his termination to the Board, arguing that the applicable emergency vehicle operation (EVO) policies under General Order 41.2.1 failed to provide clear standards and allowed for personal interpretation. Phillips argued that the City never conveyed specific speed limit expectations. Phillips also argued that termination of his employment was disproportionate to his conduct. The Board conducted an eight-hour hearing wherein it heard witness testimony and counsel arguments, and reviewed video taken from both Phillips's and Raab's police vehicle cameras during the June 2 emergency response. The Board found that Phillips did not operate his patrol vehicle with the required due regard for the safety of all persons and that Phillips's conduct violated General Order 41.2.1 and his EVO training. The Board then reviewed Phillips's history of discipline and determined that his disciplinary history fully justified the termination of his employment. The Board affirmed Chief Shepherd's decision to terminate Phillips's employment. Phillips now seeks judicial review in this court.

---

2. Although both Chief Shepherd and the Board identify General Order 26.1 in their decisions, the analysis by each centers on General Order 41.2.1.

ISSUES AND STANDARDS OF REVIEW

¶7 Phillips asserts that the Board erred in its decision to uphold his termination. First, Phillips argues that the Board erred in finding that during his June 2 emergency response, Phillips operated his vehicle in violation of both General Order 41.2.1 and his EVO training. Second, Phillips argues that the Board erred in concluding that the City's termination of Phillips's employment was (1) proportionate and appropriate discipline for his allegedly unreasonable conduct and (2) consistent with sanctions imposed on other officers in similar circumstances.

¶8 We review the Board's decision to determine if "the appeal board . . . abused its discretion or exceeded its authority." Utah Code Ann. § 10-3-1106(6)(c)(ii) (LexisNexis 2012). Our review is limited to the "record of the appeal board." *Id.* § 10-3-1106(6)(c)(i). We also note that the Board "is required to give deference to the Chief, as he is best able to balance the competing concerns in pursuing a particular disciplinary action." *Harmon v. Ogden City Civil Serv. Comm'n*, 2007 UT App 336, ¶ 6, 171 P.3d 474 (citation and internal quotation marks omitted). Insofar as Phillips asks us to overturn the Board's factual findings, we employ the clearly erroneous standard. *See Kelly v. Salt Lake City Civil Serv. Comm'n*, 2000 UT App 235, ¶ 15, 8 P.3d 1048.

ANALYSIS

I. Abuse of Discretion

A.    Violation of General Order 41.2.1

¶9 Phillips first argues that the Board erred in upholding Chief Shepherd's determination that Phillips operated his vehicle in violation of General Order 41.2.1 during his June 2 emergency response. Phillips asserts that the Board abused its discretion because General Order 41.2.1 does not identify a specific or maximum speed limit for an emergency response.

¶10    General Order 41.2.1 on Routine, Urgent, or Emergency Call Response provides, in pertinent part,

> South Jordan City Police Department vehicles may engage in emergency operations when responding to an existing emergency . . . .
>
> The provisions of this section will not release the operator of a South Jordan City Police Department vehicle from the duty to drive with *due regard for the safety of all persons*, nor will such provisions protect the operator of a South Jordan City Police Department vehicle from the consequences of careless disregard for the safety of others.
>
> A South Jordan City Police Department vehicle engaged in . . . emergency operations will utilize headlights, emergency lights, and sirens in unison, to be used appropriately to warn vehicle and pedestrian traffic along the emergency route. . . .
>
> A South Jordan City Police Department vehicle engaged in emergency operations may:
>
> *Exceed the maximum speed limit so long as life or property is not endangered. Speed will be limited by road and weather conditions and the exercise of good judgment.*
>
> *When approaching or entering an intersection controlled by a semaphore or a stop sign, all officers will slow their vehicle to a speed considered reasonable and which would allow them to bring the vehicle to a complete stop at a red light or stop sign prior to entering the intersection, if necessary. . . . If the light is green, officers will slow the vehicle to a speed that is consistent with reasonable care.*

South Jordan City Police Department, General Order 41.2.1 (March 15, 2005) (emphases added).

¶11 Phillips is correct that General Order 41.2.1 does not identify a specific maximum speed. This does not, however, mean that there are no limits upon his speed when responding to a call. Instead, Phillips's maximum speed is specifically limited by the provision requiring him to limit his speed by road and weather conditions, ability to stop at intersections with a semaphore or stop sign, and to drive with due regard for the safety of all persons. In this instance there is sufficient evidence to support the Board's finding that Phillips violated this policy by responding to an emergency without "due regard for the safety of all persons" as required by General Order 41.2.1 by driving at excessive speeds, i.e., speeds well in excess of 100 mph.

¶12 The Board is required to give deference to Chief Shepherd, who is best able to balance the competing concerns in pursuing a particular disciplinary action. *Harmon v. Ogden Civil Serv. Comm'n*, 2007 UT App 336, ¶ 6, 171 P.3d 474. Chief Shepherd determined that Phillips violated General Order 41.2.1 by failing to limit his speed with regard to reaction time, stopping distance, vehicle capabilities, and the possibility of unknown and unforeseen circumstances during his June 2 emergency response, which failure created a danger to life and property, as well as by shutting down his emergency equipment before passing a vehicle on the right. Chief Shepherd found that the uncontested evidence provided that Phillips traveled at speeds reaching 121 mph, drove through six intersections at speeds between 101 and 119 mph, and shut down his emergency lights and sirens before he passed a vehicle on the right.[3] This evidence supports the Board's determination that Chief Shepherd properly found that Phillips's June 2 emergency response put the public's safety and Phillips's own safety at risk, which failed to meet the expectation that Phillips conduct himself with "due regard for the safety of all persons"as required by General Order 41.2.1. Because the evidence adequately supports the Board's decision to affirm Phillips's termination based on his violation of General Order 41.2.1, we conclude that the Board did not abuse its discretion in this regard.

---

3. The speeds Phillips traveled were verified by an in-vehicle digital video system used by law enforcement.

B.      Violation of Emergency Vehicle Operation Training

¶13    Phillips next argues that the Board erred in finding that Phillips operated his vehicle during the emergency response in violation of his EVO training. In particular, Phillips argues that the EVO training he received did not include discussions of reasonable care or about the specific speeds at which officers could respond to an emergency. Phillips reasons that because his EVO training was so lacking, the City was unable to present evidence supporting the Board's finding that Phillips violated his training.

¶14    Chief Shepherd determined that Phillips had not only received training in the policies outlined in General Order 41.2.1 but had also received remedial training for a past violation of EVO policy. The Board heard evidence that Phillips had received EVO training during the course of his employment. At the hearing, Phillips admitted that he typically received EVO training twice a year and was specifically trained on his obligation as an officer to exercise due regard for safety. The EVO training Phillips received included class work where an instructor would review the policies. In addition, Phillips took written tests on those policies wherein he answered questions regarding what speed an officer must slow his or her vehicle to when approaching an intersection controlled by a semaphore or stop sign and further defined due regard and reasonable care. Because the evidence demonstrates that Phillips was trained in the policies outlined in General Order 41.2.1, we see no abuse of discretion in the Board's determination that Phillips violated said order.

II. The Proportionality and Consistency of Discipline

¶15    Phillips next argues that the Board erred in concluding that the City's termination of Phillips's employment was proportionate to his allegedly unreasonable conduct and consistent with sanctions imposed on other officers in similar circumstances. We review both the proportionality and consistency aspects of the Board's determination for an abuse of discretion. *Nelson v. Orem City, Dep't of Pub. Safety*, 2012 UT App 147, ¶ 16, 278 P.3d 1089, *cert. granted*, 288 P.3d 1045 (Utah 2012).

A. The Proportionality of Discipline

¶16 Phillips first asserts that the City's termination of his employment was disproportionate to his conduct because the Board erroneously found that Phillips had been disciplined eight times for exercising poor judgment. Phillips argues that he was disciplined fewer than eight times and asserts that three of the incidents the Board considered were not actually disciplinary in nature and did not demonstrate poor judgment.

¶17 The nondisciplinary incidents Phillips refers to include his accidental taser deployment, his removal from the Joint Criminal Apprehension Team as a result of his ongoing poor decision making and judgment,[4] and his involvement in a preventable car accident. After denying, without explanation, the applicability of those incidents to his termination, Phillips concludes that the Board's findings that he had "previously been disciplined eight times during his term of employment of approximately 3 ½ years" and "has consistently displayed a pattern of poor judg[ment]" are clearly not supported by the evidence. In so arguing, Phillips fails to discuss the Board's consideration of the remaining five incidents;[5] instead, he argues that it is impossible to determine

---

4. It is unclear why this incident, even if nondisciplinary in nature, should not have been considered by the Board, as it is highly relevant to the issue of Phillips's pattern of poor judgment.

5. Phillips's remaining disciplinary incidents include the following: (1) Phillips was issued a counseling letter on March 13, 2011, to remind him of his obligation related to the code of conduct after a citizen complaint of an off-duty incident wherein Phillips failed to appropriately handle a companion's vulgar and loud comments about a woman's appearance; (2) Phillips received a verbal warning on September 14, 2010, for missing several scheduled court appearances; (3) Phillips received a five-day suspension due to a verbal and physical altercation on March 12, 2010; (4) Phillips was issued a verbal warning for shocking an individual, upon that individual's request, with his taser on September 2, 2009; and (5)

(continued...)

whether the Board would have concluded termination was justified without its improper findings. Because Phillips's argument contains only conclusory statements and fails to fully develop his argument with a discussion on why the remaining five incidents are insufficient to support the City's termination of Phillips, or even why the other three did not implicate bad judgment, he does not convince us that the City's termination of his employment was disproportionate to his conduct. *See* Utah R. App. P. 24(a)(9); *State v. Merrill*, 2012 UT App 3, ¶ 27, 269 P.3d 196 ("An issue is inadequately briefed when the overall analysis of the issue is so lacking as to shift the burden of research and argument to the reviewing court." (citation and internal quotation marks omitted)).

B.     The Consistency of Discipline

¶18   Phillips also asserts that the City's termination of his employment is inconsistent with sanctions imposed on other officers in similar circumstances. In so arguing, Phillips describes instances of conduct by six other officers, which resulted in lesser discipline than Phillips's termination. Phillips does not, however, include in his proportionality of discipline analysis the performance histories or length of service with the City for each of the six officers, which information may explain or justify the lesser discipline. And, as the City points out, in at least one instance, Phillips fails to include a fully accurate disciplinary record for one of the officers, Officer Brett Perez, who was terminated for allegedly violating the City's high-speed chase policy.[6] Because

---

5. (...continued)
Phillips was suspended and assigned to complete an additional eight hours of remedial EVO training after his involvement in a traffic accident on October 27, 2008.

6. Phillips argues that this court should not "consider additional discipline information concerning Officer Brett Perez" because "none of this additional information appears in the . . . Board's record." (Citing *Guenon v. Midvale City*, 2010 UT App 51, ¶ 4, 230 P.3d 1032 (mem.) ("Relying solely on the record of the . . . Board,

(continued...)

Phillips's proportionality of discipline argument is nothing more than a bare assertion that his termination was inconsistent, without detailed information pertinent to a determination of whether the circumstances (not just the actions) of other officer sanctions were similar, his argument fails to demonstrate that the City's termination of his employment is inconsistent with sanctions of other officers in similar circumstances. *See* Utah R. App. P. 24(a)(9); *Merrill*, 2012 UT App 3, ¶ 27.

CONCLUSION

¶19    The record evidence demonstrates that Phillips traveled at speeds reaching 121 mph, drove through six intersections at speeds between 101 and 119 mph, and turned off his emergency lights and sirens before passing a vehicle on the right. The evidence also demonstrates that Phillips had been specifically trained on the policies outlined in General Order 41.2.1 regarding emergency vehicle operation. This evidence adequately supports the Board's determination that Phillips violated General Order 41.2.1 and his EVO training. Thus, Phillips's arguments that the Board abused its discretion in this regard fails.

¶20    Phillips's mere assertion that the City's termination of his employment was disproportionate to his conduct and inconsistent

---

6. (...continued)
we review the Board's decision to determin[e] if the . . . [B]oard abused its discretion or exceeded its authority." (alterations and omissions in original) (citation and internal quotation marks omitted)).) A review of the transcript from the Board's hearing, however, reveals that Phillips himself relied on this additional information in his arguments to the Board. At the hearing, Phillips's attorney stated that Perez "had serious incident after serious incident and he retained his job, and it wasn't until a fourth incident, also involving emergency vehicle operation that he was finally fired." Phillips's attorney argued that "every single one of Officer Perez's actions were as serious or more serious than what happened on June 2nd."

with sanctions imposed upon other officers in similar circumstances falls short of demonstrating that the Board abused its discretion in affirming Phillips's termination.

¶21   We therefore decline to disturb the decision of the Board.

———